408 S.E.2d 634

**Daniel LEWIS and Sonja Lewis, Plaintiffs Below, Presenting Party,**

v.

**CANAAN VALLEY RESORTS, INC., a Corporation, Defendant Below, Responding Party.**

**No. 19780.**

Supreme Court of Appeals of West Virginia.

Submitted March 5, 1991.

Decided July 19, 1991.

Christine Machel, William E. Watson & Associates, Wellsburg, for plaintiffs.

Robert M. Steptoe, Jr., Daniel C. Cooper, Steptoe & Johnson, Clarksburg, for defendant.

McHUGH, Justice:

This certified question case is a facial challenge to the constitutionality of the West Virginia Skiing Responsibility Act, *W.Va.Code*, 20–3A–1 to 20–3A–8 [1984] ("the Act"). We conclude that the Act on its face is constitutional despite the claims that it denies equal protection or constitutes impermissible special legislation,[1] or violates the so-called "certain remedy" provision of this state's *Constitution*.[2]

## I

### TRIAL COURT PROCEEDINGS

The plaintiffs, Daniel Lewis and Sonja Lewis, husband and wife, timely brought this civil action in the Circuit Court of Tucker County ("the trial court") against the defendant, Canaan Valley Resorts, Inc. ("Canaan") for personal injuries sustained by Daniel Lewis, a novice skier, while he disembarked from a ski lift at Canaan in December, 1987, allegedly due to ice accumulation in the ski lift dismount area in question. Mrs. Lewis sued for loss of spousal consortium. The plaintiffs allege that Canaan was negligent by: (1) failing to maintain reasonably the surface and subsurface area around the ski lift; (2) failing to inform plaintiff Daniel Lewis about the use of the lift, during his instructional ski course for beginning skiers; (3) failing to warn plaintiff Daniel Lewis of the extremely icy conditions allegedly existing at the time in the ski lift dismount area in question; and (4) failing to have adequate staffing at the ski lift dismount area in question.

In its timely filed answer Canaan included the affirmative defense that the action was barred by the West Virginia Skiing Responsibility Act, *W.Va.Code*, 20–3A–1 to 20–3A–8 [1984] ("the Act"). Among other things, that Act imposes certain responsibilities exclusively upon ski lift ("aerial passenger tramway") passengers, including the duty not to "[e]nter the boarding area of or use any aerial passenger tramway without requesting and receiving instruction on its use from the ski area operator, unless the passenger has the ability to use it safely without instruction[.]" *W.Va. Code*, 20–3A–4(4) [1984]. Under *W.Va. Code*, 20–3A–6 [1984] a ski area operator is liable only for injuries caused by the failure to follow the ski area operator's duties set forth in *W.Va.Code*, 20–3A–3 [1984]. Section 3(8) expressly absolves the ski area operator of any liability for any injury caused by certain ski area conditions, such as surface or subsurface snow or ice conditions.

The plaintiffs moved to strike the defense that the action was barred by the Act. The trial court eventually *granted* the motion to strike, based upon its conclusion that the Act was unconstitutional in that it violated: (1) equal protection principles (*W.Va. Const.* art. III, § 10; *U.S. Const.* amend. 14, § 1); (2) the so-called "open courts" provision (*W.Va. Const.* art. III, § 17); and the proscription against special legislation (*W.Va. Const.* art. VI, § 39).[3]

---

1. *W.Va. Const.* art. III, § 10 and *U.S. Const.* amend. XIV, § 1 (equal protection); *W.Va. Const.* art. VI, § 39 (special legislation).

2. *W.Va. Const.* art. III, § 17.

3. *W.Va. Const.* art. III, § 10 provides: "No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his [or her] peers." The pertinent part of *U.S. Const.* amend. XIV, § 1 states: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

*W.Va. Const.* art. III, § 17 provides: "The courts of this State shall be open, and *every*

The trial court subsequently certified questions to this Court, asking us to decide whether the Act violates the aforestated constitutional principles.[4]

II

## EQUAL PROTECTION AND SPECIAL LEGISLATION

*W. Va. Code*, 20–3A–1 [1984] states the legislature's findings and purpose for the Skiing Responsibility Act:

The legislature finds that the sport of skiing is practiced by a large number of citizens of West Virginia and also attracts to West Virginia a large number of nonresidents, *significantly contributing to the economy of West Virginia.* Since it is recognized that there are *inherent risks* in the sport of skiing which should be understood by each skier and which are *essentially impossible to eliminate by the ski area operator*, it is the purpose of this article to define those areas of responsibility and affirmative acts for which ski area operators shall be liable for loss, damage or injury and those risks which the skier expressly assumes for which there can be no recovery.

(emphasis added) A ski area operator's liability is limited to violations of certain statutory duties, as stated in *W. Va. Code*, 20–3A–6 [1984]:

Any ski area operator shall be liable for injury, loss or damage cause[d] by *failure to follow the duties set forth in section three* of this article where the violation of duty is causally related to the injury, loss or damage suffered. A ski area operator shall not be liable for any injury, loss or damage caused by the negligence of any person who is not an agent or employee of such operator, nor shall a ski area operator be liable for any injury, loss or damage cause[d] by any object dropped, thrown or expelled by a passenger from an aerial passenger tramway. Every ski area operator shall carry public liability insurance in limits of no[t] less than one hundred thousand dollars per person, three hundred thousand dollars per occurrence and ten thousand dollars for property damage.

(emphasis added) The exclusive duties of a ski area operator are set forth in *W. Va. Code*, 20–3A–3 [1984].[5]

---

person, for an injury done to him [or her], in his [or her] person, property or reputation, shall have remedy by due course of law; and justice shall be administered without sale, denial or delay." (emphasis added)

The relevant part of *W. Va. Const.* art. VI, § 39 states: "[I]n no case shall a special act be passed, where a general law would be proper, and can be made applicable to the case[.]"

**4.** The questions were certified pursuant to *W. Va. R. App. P.* 13 and *W. Va. Code*, 58–5–2 [1967].

This case is properly certifiable under *W. Va. Code*, 58–5–2 [1967] because it involves the sufficiency of a pleading, specifically, an affirmative defense in the answer challenged under a *W. Va. R. Civ. P.* 12(f) motion to strike an allegedly insufficient defense.

**5.** In its entirety, *W. Va. Code*, 20–3A–3 [1984] provides:

Every ski area operator shall:
(1) Mark all trail maintenance vehicles and furnish such vehicles with flashing or rotating lights which shall be in operation whenever the vehicles are working or are in movement in the skiing area.
(2) Mark with a visible sign or other warning implement the location of any hydrant or similar equipment used in snowmaking operations and located on ski slopes and trails.
(3) Mark conspicuously the top or entrance to each ski slope, trail or area to designate open or closed and relative degree of difficulty using the appropriate symbols approved by the national ski areas association as of the effective date of this article [June 8, 1984] and as may thereafter be modified by the association.
(4) Maintain one or more trail boards at prominent locations at each ski area displaying that area's network of ski trails and slopes with each trail and slope rated thereon in accordance with the aforementioned symbols' code and containing a key to the code in accordance with designations in subdivision (3) herein.
(5) Designate by trail board or otherwise which trails or slopes are open or closed.
(6) Place, or cause to be placed, whenever snow grooming or snowmaking operations are being undertaken upon any trail or slope while such trail or slope is open to the public, conspicuous notice to that effect at or near the top of the trail or slope.
(7) Post notice at prominent locations of the requirements of this article concerning the use of ski retention devices. This obligation shall be the sole requirement imposed

The Act also places certain duties on "passengers" and "skiers" and, in sections 7 and 8, respectively, imposes liability on each of them for injury, loss or damage resulting from violation of their respective duties.[6]

The plaintiffs argue that the Act on its face violates equal protection principles of the State and Federal *Constitutions.* The plaintiffs in their petition and brief filed with this Court concede that, for purposes of equal protection analysis, a suspect clas-

---

upon the ski area operator regarding the requirement for or use of ski retention devices.

(8) *Maintain the ski areas in a reasonably safe condition, except* that such *operator shall not be responsible for any injury, loss or damage caused by* the following: Variations in terrain; *surface or subsurface snow or ice conditions;* bare spots, rocks, trees, other forms of forest growth or debris; collisions with pole lines, lift towers or any component thereof; or, collisions with snowmaking equipment which is marked by a visible sign or other warning implement in compliance with subdivision two of this section.

(9) When no certified ambulance service is available in the vicinity, have on duty at or near the skiing area, during all times that skiing areas are open for skiing, at least one trained and currently certified emergency medical technician.

(emphasis added) A "ski area" means "any property owned or leased and under the control of the ski area operator or operators within West Virginia." *W.Va.Code,* 20–3A–2(c) [1984].

6. A "passenger" means "any person who is lawfully using an aerial passenger tramway, or is waiting to embark or has recently disembarked from an aerial passenger tramway and is in its immediate vicinity." *W.Va.Code,* 20–3A–2(b) [1984]. The duties of "passengers" are set forth in *W.Va.Code,* 20–3A–4 [1984]:

No passenger shall:

(1) Board or embark upon or disembark from an aerial passenger tramway except at an area designated for such purpose;

(2) Drop, throw or expel any object from an aerial passenger tramway;

(3) Perform any act which interferes with the running or operation of an aerial passenger tramway;

(4) *Enter the boarding area of or use any aerial passenger tramway without requesting and receiving instruction on its use from the ski area operator,* unless the passenger has the ability to use it safely without instruction;

(5) Engage in any harmful conduct, or willfully or negligently engage in any type of conduct which contributes to or causes injury to any person; or

(6) Embark on an aerial passenger tramway without the authority, express or implied, of the ski area operator.

(emphasis added)

A "skier" means "any person present at a skiing area under the control of a ski area operator for the purpose of engaging in the sport of skiing by utilizing the ski slopes and trails, but does not include a passenger using an aerial passenger tramway." *W.Va.Code,* 20–3A–2(f) [1984]. A "skiing area" means "all slopes and trails not including any aerial passenger tramway." *W.Va.Code,* 20–3A–2(e) [1984]. The duties of "skiers" are stated in *W.Va.Code,* 20–3A–5 [1984]:

It is recognized that skiing as a recreational sport is hazardous to skiers, regardless of all feasible safety measures which can be taken.

*Each skier expressly assumes the risk of and legal responsibility for any injury, loss or damage to person or property which results from participation in the sport of skiing including,* but not limited to, *any injury, loss or damage caused by* the following: Variations in terrain; *surface or subsurface snow or ice conditions;* bare spots, rocks, trees, other forms of forest growth or debris; collisions with pole lines, lift towers or any component thereof; or, collisions with snowmaking equipment which is marked by a visible sign or other warning implement in compliance with section three of this article. Each skier shall have the sole individual responsibility for knowing the range of his [or her] own ability to negotiate any slope or trail, and it shall be the duty of each skier to ski within the limits of the skier's own ability, to maintain reasonable control of speed and course at all times while skiing, to heed all posted warnings, to ski only on a skiing area designated by the ski area operator and to refrain from acting in a manner which may cause or contribute to the injury of anyone. *If while actually skiing, any skier collides with any object or person,* except an obviously intoxicated person of whom the ski area operator is aware, *the responsibility for such collision shall be solely that of the skier or skiers involved and not that of the ski area operator.*

No person shall place any object in the skiing area or on the uphill track or on any aerial passenger tramway which may cause a passenger or skier to fall; or which crosses the track of any T-bar lift, J-bar lift, platter lift or similar device, or a fiber rope two except at a designated location; nor shall any person involved in a skiing accident depart the ski area without leaving personal identification, including name and address, or without notifying the proper authorities or without obtaining assistance when that person knows or reasonably should know that any other person involved in the accident is in need of medical or other assistance. No skier shall fail to wear retention straps or other devices to help prevent runaway skis.

(emphasis added)

sification or a fundamental right is not involved because the right to recover damages is economically based. Invoking the traditional, "rational basis" equal protection analysis, the plaintiffs contend that the separate classification of ski area operators by this Act is unreasonably narrow; the plaintiffs claim the natural classification, instead, would be the operators of all inherently hazardous recreational activities which contribute significantly to the economy of this state. The plaintiffs also contend that, while protecting the economic stability of industries which contribute significantly to the state's economy may be a legitimate state objective, the means selected here to achieve that objective, namely, to immunize, for the most part, such industries from tort liability is not rationally related to that objective. The plaintiffs point to existing tort principles (assumption of the risk or comparative negligence, for example) and other existing principles outside the Act (such as rules of civil procedure and of lawyers' professional responsibility proscribing frivolous lawsuits) which, in their opinion, adequately protect such industries from tort liability.

Finally, the plaintiffs contend that the Act is overly broad on its face because it not only immunizes ski area operators from the inherent risks of the sport of skiing which are essentially impossible for the ski area operators to eliminate, but, as written, also allegedly immunizes ski area operators from liability for even their intentional torts concerning skiing area or aerial passenger tramway conditions.[7]

Canaan, on the other hand, stresses that existing tort principles and other judicially created principles are not adequate because they do not insulate ski area operators from *exposure* to liability, and it is such exposure which results in the very expensive liability insurance premiums which cripple the skiing industry and its contribution to the state's economy. Citing judicial precedents elsewhere upholding similar skiing responsibility acts against equal protection challenges,[8] Canaan argues that the Act's classification of ski area operators is reasonable; that the objective of the Act, to protect the economic stability of an industry contributing significantly to the state's economy, is a legitimate state purpose; and that the means selected to achieve that objective, that is, limiting ski area operators' liability to violations of certain statutory duties which cause injury, is rationally related to the objective, and, therefore, within the broad discretion of the legislature to select.

The generally applicable fundamental principle is that the powers of the legislature are almost plenary: "The Constitution of West Virginia being a restriction of power rather than a grant thereof, the legislature has the authority to enact any measure not inhibited thereby." Syl. pt. 1, *Foster v. Cooper*, 155 W.Va. 619, 186 S.E.2d 837 (1972).[9] Moreover, in light of the constitutionally required principle of the separation of powers among the judicial, legislative and executive branches of state government, *W.Va. Const.* art. V, § 1, courts ordinarily presume that legislation is constitutional, and the negation of legislative power must be shown clearly:

'In considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches. [*W.Va. Const.* art. V, § 1.] Every reasonable construction must be resorted to by the courts in order to sustain constitutionali-

---

7. The plaintiffs give the following example. The Act on its face (*W.Va.Code*, 20–3A–5 [1984], *see supra* note 6, on collisions "with any object") allegedly would immunize the ski area operator from liability should the operator intentionally conceal with snow a huge boulder placed intentionally in a dangerous location on a slope or trail by the operator, and a skier, exercising due care, collides with the concealed boulder and is injured thereby.

8. We discuss these precedents later in this opinion.

9. The *Constitution of the United States*, particularly the fourteenth amendment thereto, may also inhibit the legislature from enacting certain legislation.

ty, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt.' Syl. pt. 1, *State ex rel. Appalachian Power Co. v. Gainer*, 149 W.Va. 740, 143 S.E.2d 351 (1965). Syl. pt. 2, *West Virginia Public Employees Retirement System v. Dodd*, 183 W.Va. 544, 396 S.E.2d 725 (1990).

■ Accordingly, a facial challenge to the constitutionality of legislation is the most difficult challenge to mount successfully. The challenger must establish that no set of circumstances exists under which the legislation would be valid; the fact that the legislation might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid. *Rust v. Sullivan*, —— U.S. ——, ——, 111 S.Ct. 1759, 1767, 114 L.Ed.2d 233, 249 (1991). To the same effect is *State ex rel. Haden v. Calco Awning & Window Corp.*, 153 W.Va. 524, 170 S.E.2d 362 (1969), where the Court stated that a statute may be constitutional on its face but may be applied in an unconstitutional manner. However, courts will not declare a statute wholly invalid based upon the mere possibility of an unconstitutional application of the statute. *Id.* at 530, 170 S.E.2d at 366.

■ We now turn specifically to equal protection challenges to legislation. This Court, in syllabus point 2 of *Israel v. West Virginia Secondary Schools Activities Commission*, 182 W.Va. 454, 388 S.E.2d 480 (1989), observed that "[e]qual protection of the law is implicated when a classification treats similarly situated persons in a disadvantageous manner. The claimed discrimination must be a product of state action as distinguished from a purely private activity." *Israel* finally settled, in syllabus point 4, where this state's equal protection concepts, not expressly set forth in the

State *Constitution*, are located implicitly: "West Virginia's constitutional equal protection principle is a part of the Due Process Clause found in Article III, Section 10 of the West Virginia Constitution." *See also* syl. pt. 3, *Robertson v. Goldman*, 179 W.Va. 453, 369 S.E.2d 888 (1988). The scope of our state equal protection concepts "is coextensive [with] or broader than that of the fourteenth amendment to the United States Constitution." *Id.* (in part).

There are three types of equal protection analysis. First, when a suspect classification, such as race, or a fundamental, constitutional right, such as speech, is involved, the legislation must survive "strict scrutiny," that is, the legislative classification must be necessary to obtain a compelling state interest. *Deeds v. Lindsey*, 179 W.Va. 674, 677, 371 S.E.2d 602, 605 (1988). Second, a so-called intermediate level of protection is accorded certain legislative classifications, such as those which are gender-based, and the classifications must serve an important governmental objective and must be substantially related to the achievement of that objective. Syl. pt. 5, *Israel*. *See also* syl. pts. 3–4, *Shelby J.S. v. George L.H.*, 181 W.Va. 154, 381 S.E.2d 269 (1989) (illegitimacy cases). As we expressed in *Israel*, however, this "middletier" equal protection analysis is "substantially equivalent" to the "strict scrutiny" test stated immediately above. *Israel*, 182 W.Va. at 461–462, 388 S.E.2d at 488.

Third, all other legislative classifications, including those which involve economic rights, are subjected to the least level of scrutiny, the traditional equal protection concept that the legislative classification will be upheld if it is reasonably related to the achievement of a legitimate state purpose. We recently reformulated this "rational basis" type of equal protection analysis in syllabus point 4 of *Gibson v. West Virginia Department of Highways*, 185 W.Va. 214, 406 S.E.2d 440 (1991):

' "Where economic rights are concerned, we look to see whether the classification is a rational one based on social, economic, historic or geographic factors, whether it bears a reasonable relation-

ship to a proper governmental purpose, and whether all persons within the class are treated equally. Where such classification is rational and bears the requisite reasonable relationship, the statute does not violate Section 10 of Article III of the West Virginia Constitution, which is our equal protection clause." Syllabus Point 7, [as modified,] *Atchinson v. Erwin,* [172] W.Va. [8], 302 S.E.2d 78 (1983).' Syllabus Point 4, as modified, *Hartsock–Flesher Candy Co. v. Wheeling Wholesale Grocery Co.,* 174 W.Va. 538, 328 S.E.2d 144 (1984).

*See also* syl. pt. 4, *Courtney v. State Department of Health,* 182 W.Va. 465, 388 S.E.2d 491 (1989); *Cimino v. Board of Education,* 158 W.Va. 267, 274–75, 210 S.E.2d 485, 490 (1974).

A corollary principle is that the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines. *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511, 517 (1976).

■ Nearly all of the courts in other jurisdictions have upheld the skiing responsibility acts in those jurisdictions against equal protection challenges. *Pizza v. Wolf Creek Ski Development Corp.,* 711 P.2d 671, 679 (Colo.1985) (en banc) (act imposes rebuttable presumption that responsibility for collisions by skiers with any person, natural object, or man-made structure marked in accordance with act is solely that of skier(s) involved and not that of ski area operator; skier fell and collided into slope, due to variation in terrain); *Northcutt v. Sun Valley Co.,* 117 Idaho 351, 356–58, 787 P.2d 1159, 1164–66 (1990) (act's language is very similar to West Virginia's Act; skier struck signpost after another skier collided with him); *Schmitz v. Cannonsburg Skiing Corp.,* 170 Mich.App. 692, 694, 428 N.W.2d 742, 743 (1988) (skier collided with tree on slope), *appeal denied,* 432 Mich. 856 (1989); *Grieb v. Alpine Valley Ski Area, Inc.,* 155 Mich.App. 484, 487–90, 400 N.W.2d 653, 655–56 (1986) (skier collided with another skier), *appeal denied,*

428 Mich. 864 (1987). *See also Kelleher v. Big Sky of Montana,* 642 F.Supp. 1128, 1130–31 (D.Mont.1986) (anticipating Montana law; skier injured in avalanche). The courts in these cases involving legislation similar to West Virginia's Act held that the legislation passed the "rational basis" equal protection test: the separate classification of ski area operators at the time was reasonable in light of the skiing industry's significant economic contribution to the state, and protection of that industry's economic vitality by limiting the liability of ski area operators to those duties not involving the inherent risks of the sport is rationally related to the state's legitimate interest in so protecting such an industry.

One jurisdiction has held that three portions of its skiing responsibility act at that time violated equal protection principles. In *Brewer v. Ski–Lift, Inc.,* 234 Mont. 109, 762 P.2d 226 (1988), the court struck down these portions of the act: (1) a skier assumes the risk and all legal responsibility for personal injuries or property damage resulting from "participating in the sport of skiing by virtue of his [or her] participation"; (2) the responsibility for "collisions with a person *or object* while skiing is the responsibility of the person or persons and not the responsibility of the ski area operator" (emphasis added); and (3) a portion which eliminated comparative negligence of skiers in favor of contributory negligence of skiers.

The court in *Brewer* concluded that these first two portions of the act were overly broad in that they went beyond the stated statutory purpose of insulating ski area operators from liability only for the *"inherent* risks in the sport of skiing that are *essentially impossible to eliminate* by the ski area operator but that should be known by the skier." (language emphasized in the discussion in *Brewer* ) The court believed the third portion of the act, on skiers' contributory negligence, in lieu of skiers' comparative negligence, concerning ski area operator's statutory duties, was not rationally related to the stated legislative purpose of protecting ski area operators from liability for inherent risks which are

essentially impossible for the operators to eliminate. *Id.* at 113–16, 762 P.2d at 229–31. The plaintiff in *Brewer* was injured while skiing; he fell on a tree stump which he alleged had been placed there, in a dangerous location, sharp roots up, in the course of slope maintenance.[10]

*Brewer's* holding on the violation of equal protection guarantees is not persuasive here. While West Virginia's Act contains language similar to the language of the first two statutory portions invalidated in *Brewer*,[11] the Act also requires the ski area operator to "[m]aintain the ski areas in a reasonably safe condition," except that this duty does not create liability for injuries or damage caused by certain naturally located objects or naturally occurring phenomena or caused by collisions with certain man-made items which are integral to the sport of skiing. *W. Va. Code*, 20–3A–3(8) [1984], *see supra* note 5. In view of this statutory requirement of reasonable maintenance, we do not attribute to the legislature the intent to immunize ski area operators from liability for (1) intentional torts or (2) negligence, where either of these involves a violation of an operator's duty to maintain the ski areas in a reasonably safe condition.[12] The legislature intended to immunize ski area operators only for the "inherent risks in the sport of skiing which should be understood by each skier and which are essentially impossible to eliminate by the ski area operator[.]" *W. Va. Code*, 20–3A–1 [1984], quoted in its entirety at the outset of this section of this opinion. We interpret each of the provisions of the Act, including *W. Va. Code*, 20–3A–5 [1984], on the duties of skiers, to give effect to the legislative purpose set forth in *W. Va. Code*, 20–3A–1 [1984], thereby avoiding an application of the Act in a manner which would violate equal protection principles.

Accordingly, this Court, in conformity with nearly all of the courts deciding equal protection challenges to similar legislation, holds that the West Virginia Skiing Responsibility Act, *W. Va. Code*, 20–3A–1 to 20–3A–8 [1984], which immunizes ski area operators from tort liability for the inherent risks in the sport of skiing which are essentially impossible for the operators to eliminate, does not violate equal protection principles of article III, section 10 of the *Constitution of West Virginia* or of the fourteenth amendment to the *Constitution of the United States*. The court in *Brewer* recognized that "[t]here is a legitimate state interest in protecting the ski industry from frivolous lawsuits and liability over which the operator has no control." *Brewer*, 234 Mont. at 113, 762 P.2d at 229. We agree with that point.

We also note that the legislature has enacted similar legislation immunizing, for the most part, commercial whitewater outfitters and guides, *W. Va. Code*, 20–3B–1 to 20–3B–5 [1987]; operators of certain equestrian activities, *W. Va. Code*, 20–4–1 to 20–4–7 [1990]; and landowners not charging the public for recreational use of their land, *W. Va. Code*, 19–25–1 to 19–25–6 [1965, 1986]. To the extent that these acts involve inherently hazardous recreational activities which contribute significantly to this state's economy, they undermine the plaintiffs' contention that the classification of ski area operators is unreasonably narrow. We do not, however, express an opinion at this time on whether each of these acts is valid for equal protection purposes.

■ Our holding in this case that the Act does not violate equal protection principles

---

**10.** The Montana skiing responsibility act was amended after *Brewer* to address the court's concerns.

**11.** *W. Va. Code*, 20–3A–5 [1984], *see supra* note 6.

**12.** *See supra* note 7. We believe the operator, under the Act's reasonable maintenance duty for ski area operators, would be liable for the skier's personal injuries and property damage in the note 7 intentional tort situation, as well as where the boulder was *negligently* placed there and negligently concealed during *maintenance*.

In contrast, a ski area operator would not be liable, under the explicit exception provisions of the Act, for injuries or damages sustained by a skier or tramway passenger which were caused by, for example, surface or subsurface snow or ice conditions, because they are inherent risks essentially impossible for the ski area operator to eliminate, even with "reasonable" maintenance.

694

leads us to conclude that the Act similarly does not constitute special legislation in violation of art. VI, section 39 of the *Constitution of West Virginia, see supra* note 3. *See Shackleford v. Catlett,* 161 W.Va. 568, 574, 244 S.E.2d 327, 331 (1978); *Cimino v. Board of Education,* 158 W.Va. 267, 275, 210 S.E.2d 485, 490–91 (1974).

## III

### CERTAIN REMEDY

The plaintiffs also argue that the Act violates the "certain remedy" portion of *W.Va. Const.* art. III, § 17, *see supra* note 3.[13]

 This Court very recently traced the history of the certain remedy provision and surveyed the various judicial interpretations elsewhere of comparable state constitutional provisions. In syllabus point 6 of *Gibson v. West Virginia Department of Highways,* 185 W.Va. 214, 406 S.E.2d 440 (1991), we distilled this general rule: "There is [ordinarily] a presumption of constitutionality with regard to legislation. However, when a legislative enactment either substantially impairs vested rights or severely limits existing procedural remedies permitting court adjudication of cases, then the certain remedy provision of Article III, Section 17 of the West Virginia Constitution is implicated."[14]

While "[w]e decline to hold that the certain remedy provision ... has no meaning when it comes to legislative enactments[,]" *Gibson,* 185 W.Va. at 225, 406 S.E.2d at 451, a couple of fundamental points are to be considered in arriving at the proper scope of this state's constitutional provision. First, this provision itself states that the "remedy" constitutionally guaranteed "for an injury done" to protected interests is qualified by the words, "by due course of law[.]" *See supra* note 3. This language extends considerable latitude to the legislature. Second, under *W.Va. Const.* art. VIII, § 13, the general authority of the legislature to alter or repeal the common law is expressly recognized.[15] Moreover, even though a statute involves a complete bar to, or a substantial impairment of, a civil action to collect damages for personal injuries or property damage in certain circumstances, "[t]he fact that there is court involvement does not alter the economic basis underlying the right to sue." *Gibson,* 185 W.Va. at 218, 406 S.E.2d at 444. Thus, access to the courts is not a fundamental right in the sense that any limitation on that right requires "strict scrutiny" for purposes of the certain remedy provision. *Meech v. Hillhaven West, Inc.,* 238 Mont. 21, 37–38, 776 P.2d 488, 498 (1989).

To give effect to the certain remedy provision, which recognizes the tension between the existing right of a person to a remedy for certain injuries, on the one

**13.** This state constitutional provision has sometimes been called the "open courts" or "access-to-courts" provision. Consistent with the terminology which we utilized recently in *Gibson v. West Virginia Department of Highways,* 185 W.Va. 214, 406 S.E.2d 440 (1991), we will refer in this opinion to this state constitutional provision as the "certain remedy" provision.

As we observed in *Gibson, W.Va. Const.* art. III, § 17 also contains a provision on the public's right to attend most judicial proceedings and a provision on the "sale" or delay of justice.

**14.** If a suspect classification or a fundamental, constitutional right is involved, there is a presumption of unconstitutionality.

In *Gibson,* this Court applied the general rule of syllabus point 6 in upholding the validity, under the certain remedy provision, of a ten-year statute of repose for actions for injuries, wrongful death or damages arising out of the defective or unsafe condition of any improve-

ment to real property. No vested right was involved because the statute had been enacted prior to accrual of the common-law cause of action in question in that case. No substantial impairment of existing procedural remedies occurred because the time period selected by the legislature was *reasonable* in light of empirical data indicating that nearly all actions for that type of injury had been brought within ten years in jurisdictions not having an applicable statute of repose.

**15.** *W.Va. Const.* art. VIII, § 13 in its entirety states:

Except as otherwise provided in this article, such parts of the *common law,* and of the laws of this State as are in force on the effective date of this article [1872] and are not repugnant thereto, shall be and continue the law of this State *until altered or repealed by the legislature.*
(emphasis added)

hand, and, on the other hand, the legislature's power to alter or repeal that remedy by "due course of law[,]" this Court adopts the following two-part test, once it has been shown, pursuant to syllabus point 6 of *Gibson,* that the certain remedy provision "is implicated." When legislation either substantially impairs vested rights or severely limits existing procedural remedies permitting court adjudication, thereby implicating the certain remedy provision of article III, section 17 of the *Constitution of West Virginia,* the legislation will be upheld under that provision if, first, a reasonably effective alternative remedy is provided by the legislation or, second, if no such alternative remedy is provided, the purpose of the alteration or repeal of the existing cause of action or remedy is to eliminate or curtail a clear social or economic problem, and the alteration or repeal of the existing cause of action or remedy is a reasonable method of achieving such purpose. *See, e.g., Horton v. Goldminer's Daughter,* 785 P.2d 1087, 1094 (Utah 1989) (discussed in *Gibson* ). *See also Smith v. Department of Insurance,* 507 So.2d 1080, 1088 (Fla.1987); *Lucas v. United States,* 757 S.W.2d 687, 690 (Tex.1988). *Cf. O'Neil v. City of Parkersburg,* 160 W.Va. 694, 700–01, 237 S.E.2d 504, 508 (1977) (applying a "rational basis" test for equal protection analysis and suggesting same test under *W.Va. Const.* art. III, § 17 on "open courts"; protection of public coffers, by itself, however, without considering effect on tort victim, is not reasonable).

This balanced approach to the certain remedy provision in the context of economic conditions in the state is more in line with the state constitutional framers' intent than the oversimplified expression that " '[c]onstitutional protections exist for litigants regardless of market conditions[.]' " *Hoem v. State,* 756 P.2d 780, 784 (Wyo. 1988) (equal protection case; internal citation omitted). The last quoted statement is incorrect insofar as it means that the certain remedy provision absolutely precludes the legislature from altering or repealing

the common law based upon economic conditions in the state.

▮▮▮▮ In the present case the Act did not impair any vested rights of the plaintiffs because the Act was enacted prior to accrual of the plaintiffs' common-law cause of action. The Act does, however, severely limit the procedural remedies existing at the time the Act was enacted. The Act limits a ski area operator's duties to those set forth in *W.Va.Code,* 20–3A–3 [1984], *see supra* note 5, and absolves the operator from the common-law exposure to liability for the inherent risks in the sport of skiing which are essentially impossible for the operator to eliminate, such as the exceptions to the reasonable maintenance duty, including surface or subsurface snow or ice conditions, set forth in *W.Va.Code,* 20–3A–3(8) [1984], *see supra* note 5. The certain remedy provision is, therefore, implicated.

The Act does not provide an alternative remedy for the repealed common-law cause of action for damages resulting from the inherent risks of skiing which the operator essentially cannot eliminate. However, the obvious purpose of the Act was to eliminate or to curtail a clear economic problem for ski area operators and, therefore, for the economy of the state, specifically, *exposure* to liability for the inherent risks of skiing which the operators essentially cannot eliminate. Finally, the repeal of the common-law cause of action for damages resulting from the inherent risks of skiing which the operator essentially cannot eliminate is a reasonable method of achieving the purpose of the Act. *Kelleher v. Big Sky of Montana,* 642 F.Supp. 1128, 1130–31 (D.Mont.1986). In this regard it is significant that skiers have the lowest rate of recovery among all personal-injury sports litigants who go to trial. Specifically, only twenty-three percent of ski accident cases which were submitted to juries between 1982 and 1989 resulted in verdicts for the plaintiffs. Rubin, *Ski Liability Law Cuts New Trails,* TRIAL, Oct.1990, 108, 108, 111–12.[16] Jurors seem to be saying that skiers fully assume the risk inherent in the

---

**16.** This survey excludes accidents involving negligently *maintained* ski *lift equipment,* in which

the plaintiffs' recovery rate is much higher. *Id.* at 112 & 113 n. 29.

sport. *Id.* at 112. The Act codifies this prevailing common-law result but also removes the expensive *exposure* to liability. Therefore, as in *Gibson v. West Virginia Department of Highways*, the legislation is reasonable in terms of empirical data indicating that the legislation essentially codifies the general *results* under the common law.

This Court consequently holds that the West Virginia Skiing Responsibility Act, *W.Va.Code*, 20–3A–1 to 20–3A–8 [1984], does not violate the certain remedy provision of article III, section 17 of the *Constitution of West Virginia.*

Having answered the certified questions in the negative, that is, the Act does not violate the constitutional provisions in question, we remand this case with directions for the trial court to vacate its order granting the plaintiffs' motion to strike the affirmative defense that the action is barred by the West Virginia Skiing Responsibility Act and, in lieu thereof, to enter an order denying that motion to strike.

Certified questions answered; case remanded with directions.