IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2022 Term

_____

No. 22-0261

_____

FILED

**November 1, 2022**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA EX REL.
WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION,
Petitioner,

v.

THE HONORABLE JASON A. CUOMO,
JUDGE OF THE CIRCUIT COURT OF OHIO COUNTY, AND
HEATHER B., LEGAL GUARDIAN OF A.B.,
Respondents.

_____

Petition for a Writ of Prohibition

WRIT GRANTED

_____

Submitted: September 28, 2022
Filed: November 1, 2022

Stephen F. Gandee, Esq.
Robinson & McElwee PLLC
Clarksburg, West Virginia
Counsel for Petitioner

David L. Delk, Jr., Esq.
Grove, Holmstrand & Delk PLLC
Wheeling, West Virginia
Counsel for Respondent Heather B.

CHIEF JUSTICE HUTCHISON delivered the Opinion of the Court.

JUSTICE WOOTON, deeming himself disqualified, did not participate in the decision of this case.

JUDGE COURRIER sitting by temporary assignment.

# SYLLABUS OF THE COURT

1.      "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight." Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

2.      "[T]his Court has a responsibility *sua sponte* to examine the basis of its own jurisdiction." Syllabus Point 1, in part, *James M.B. v. Carolyn M.*, 193 W. Va. 289, 456 S.E.2d 16 (1995).

i

3. "Three factors to be considered in deciding whether to address technically moot issues are as follows: first, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief; second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public; and third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting and determinate nature, may appropriately be decided." Syllabus Point 1, *Israel by Israel v. West Virginia Secondary School[] Activities Commission*, 182 W. Va. 454, 388 S.E.2d 480 (1989).

4. "As a general rule courts should not interfere with the internal affairs of school activities commissions or associations." Syllabus Point 2, *State ex rel. West Virginia Secondary School Activities Commission v. Oakley*, 152 W.Va. 533, 164 S.E.2d 775 (1968).

5. "Decisions properly within the purview of the legislative grant of authority to the West Virginia Secondary Schools Activities Commission under West Virginia Code § 18–2–25 (2008), such as the application of WVSSAC Rules and the review of calls or rulings made by game officials, are not subject to judicial review." Syllabus Point 3, *State ex rel. West Virginia Secondary School[] Activit[ies] Commission v. Webster*, 228 W. Va. 75, 717 S.E.2d 859 (2011).

6. "The concept of equal protection of the laws is inherent in article three, section ten of the West Virginia Constitution, and the scope and application of this protection is coextensive or broader than that of the fourteenth amendment to the United States Constitution." Syllabus Point 3, *Robertson v. Goldman*, 179 W. Va. 453, 369 S.E.2d 888 (1988).

7. The West Virginia Secondary School Activities Commission's Residence-Transfer Rule, West Virginia Code of State Rules § 127-2-7.2.a (2021), is neither arbitrary and capricious nor a violation of equal protection.

**HUTCHISON, Chief Justice:**

On March 4, 2022, the Circuit Court of Ohio County entered a preliminary injunction against the West Virginia Secondary School Activities Commission ("the WVSSAC") in favor of Heather B. as legal guardian of A.B.[1] The circuit court concluded the WVSSAC applied the WVSSAC's Waiver Rule, W. Va. C.S.R. § 127-2-2 (2021), in an arbitrary and capricious manner. It further concluded the WVSSAC's Residence-Transfer Rule, W. Va. C.S.R. § 127-2-7.2.a (2021), was facially unconstitutional.

The WVSSAC now seeks a writ of prohibition prohibiting enforcement of the preliminary injunction. We grant the writ for two reasons. First, we conclude that the circuit court completely lacked jurisdiction to review A.B.'s as-applied challenge to the WVSSAC's Waiver Rule. Second, we conclude that while the circuit court had jurisdiction to determine *whether* the Residence-Transfer Rule is facially unconstitutional, the circuit court clearly erred in finding the Residence-Transfer Rule to be facially unconstitutional. For these reasons, we grant the WVSSAC a writ of prohibition and dissolve the circuit court's March 4, 2022, preliminary injunction.

## I. Facts and Procedural Background

---

[1]Because A.B. is a juvenile, we use initials to identify her and her mother. *See* W. Va. R. App. Proc. 40(e)(1).

1

A.B. attended John Marshall High School as a tenth grader for school year 2020-2021. Before the next school year, she decided to transfer to Wheeling Central Catholic High School, located in Ohio County and a ten-minute drive from her home in Benwood, Marshall County. According to Heather, A.B. transferred to Wheeling Central Catholic because A.B. was seeking smaller class sizes, a more personal environment, and wanted to attend a school that offered religion classes and which would foster A.B.'s moral code and religious beliefs. She enrolled at Wheeling Central Catholic on August 25, 2021.

A.B., who had previously played softball and basketball on recreation and travel teams, wanted to try out for sports at Wheeling Central Catholic, specifically softball and basketball. Heather claimed A.B.'s participation in sports provided an outlet for A.B.'s introversion and anxiety. A.B. learned she might not be eligible to play sports at Wheeling Central Catholic because of the WVSSAC's Residence-Transfer Rule, which provides, in pertinent part:

> If a student transfers during the academic year from one secondary school to another secondary school, the student shall be ineligible for 365 days from date of enrollment, absent a bona fide change of residence. Students who are ineligible under this rule may practice during the period of ineligibility, given they meet all other factors of eligibility outlined in Policy 2436.10, § 3. Eligibility.

W. Va. C.S.R. § 127-2-7.2.a (2021).[2] The WVSSAC Rules empower the WVSSAC Board of Directors to waive a WVSSAC rule when "it determines the rule fails to accomplish the

---

[2]A.B. does not contend there was a bona fide change of residence.

2

purpose for which it is intended or when the rule causes extreme and undue hardship upon the student." *Id*. § 127-2-2.1 (2021).

Heather e-mailed WVSSAC Executive Director Bernard Dolan seeking a waiver of the Residence-Transfer Rule for A.B. Mr. Dolan responded that the Residence-Transfer Rule precluded A.B. from playing sports at Wheeling Central Catholic for one year without a waiver.[3] Heather then asked the WVSSAC Board of Directors for a waiver, which the Board of Directors denied because A.B. "had not demonstrated that an extreme and undue hardship was present and there was no allegation that the rule fail[ed] to accomplish the purpose for which it is intended." Heather appealed to the WVSSAC Review Board, which, by a 4-2 vote, affirmed the Board of Directors' denial. The Review Board found that A.B. felt she would thrive in a smaller school and this had occurred since A.B.'s grades at Wheeling Central Catholic were generally excellent. The Board of Review explained that A.B. had shown no hardship. It finally found that "the purpose of the 365 day ineligibility is to assist the student in 'settling in' to a new academic environment and experience and to help establish solid academic performance. That is precisely what the student and her family sought in a transfer to a smaller school."

---

[3]Mr. Dolan's letter merely confirmed Wheeling Central Catholic's determination that the Residence-Transfer Rule prohibited A.B. from playing sports at Wheeling Central Catholic for one year without a waiver. The Executive Director lacks the authority to issue a waiver.

Heather, on A.B.'s behalf, sought an injunction, claiming WVSSAC's decision to deny A.B. a waiver was arbitrary and capricious and denied A.B. equal protection of the law. The injunction request also alleged the Residence-Transfer Rule was itself arbitrary and capricious and violated equal protection.

At a preliminary injunction hearing before the circuit court, Mr. Dolan testified the rationale behind the Residence-Transfer Rule was to allow a student to settle into a new school. He testified the Residence-Transfer Rule addresses the pressures that inure on a new student in sports competition. Mr. Dolan also testified that the pressures of playing in a game are much higher than the pressures of practice. He further testified that this explains why the Residence-Transfer Rule prohibits a transfer student from playing in a game, but permits a student to do everything else associated with playing a sport.

The circuit court applied the preliminary injunction test set forth in *Jefferson County Board of Education v. Jefferson County Education Association*, 183 W. Va. 15, 24, 393 S.E.2d 653, 662 (1990). It concluded A.B. demonstrated the likelihood of irreparable harm if she was not permitted to play sports at Wheeling Central Catholic, and that, conversely, the WVSSAC would not suffer any harm if A.B. was permitted to play. The circuit court also concluded the public interest favored the preliminary injunction. Most importantly, it found that A.B. was likely to succeed on her substantive claims, which the circuit court characterized as: (1) "Was [the Residence-Transfer Rule] written in an arbitrary and capricious fashion or was it written in such a way as to be rationally related

4

to a legitimate purpose?" and, (2) "Was [the Waiver Rule] applied in this case in an arbitrary and capricious manner?" The circuit court specifically concluded it "ha[d] the authority to determine whether the WVSSAC rule in question was written, promulgated or applied in an arbitrary or capricious manner and whether it was rationally related to a legitimate purpose." The court found A.B. was likely to be successful in her challenges "in as much as [sic] [the Residence-Transfer Rule] appears to be written in an arbitrary fashion and not rationally related to a legitimate purpose, while [the Waiver Rule] appears to have been applied by the WVSSAC in an arbitrary and capricious manner."

The circuit court specifically discounted the "settling in" rationale for the Residence-Transfer Rule as "it appears arbitrary to this Court that a 'settling in' process would permit a student to do everything with her new team except play in games." The circuit court found it

> difficult to understand the rationale of the WVSSAC as to how sitting on a bench during games to avoid the "pressure of competition" is less damaging than allowing the transferring student to experience the benefits of actually playing with your team in a game and to experience the comradery that goes with the glory of victory and the agony of defeat.

The circuit court found that the Residence-Transfer Rule treated similarly situated students differently. It observed that a student whose residence was only a ten-minute drive from the new school must "settle in," but a student transferring from California to that same school may play in games immediately. Similarly, a student

5

transferring from a non-member WVSSAC school to a WVSSAC member school did not fall within the Residence-Transfer Rule. The circuit court concluded that the Residence-Transfer Rule "just appears to be written in an arbitrary and capricious manner and offends the equal protection guarantees of the West Virginia Constitution."

The circuit court also concluded the WVSSAC applied the Waiver Rule in an arbitrary and capricious manner because at each level of the WVSSAC proceedings, A.B. presented uncontradicted evidence that playing sports was a mental health issue to her. Thus, the circuit court found application of the Residence-Transfer Rule caused A.B. extreme and undue hardship under the Waiver Rule.

The WVSSAC now seeks a writ of prohibition from this Court preventing enforcement of the preliminary injunction.

## II. Standard of Review and Standard for Issuance of the Writ

We may review a circuit court's issuance of a preliminary injunction either by way of our appellate jurisdiction over civil cases in equity or by way of our original jurisdiction sounding in prohibition. *State ex rel. McGraw v. Telecheck Servs., Inc.*, 213 W. Va. 438, 445-46, 582 S.E.2d 885, 892-93 (2003). The WVSSAC invokes our original jurisdiction in prohibition to challenge the preliminary injunction. "[W]e have held in numerous cases that a writ of prohibition will lie to control the actions of a court which exceeds, abuses, or acts without jurisdiction." *State v. Lewis*, 188 W. Va. 85, 91, 422 S.E.2d

6

807, 813 (1992), *superseded by statute on other grounds as recognized in State v. Butler*, 239 W. Va. 168, 179 n.27, 799 S.E.2d 718, 729 n.27 (2017).

A party seeking a writ of prohibition carries a heavy burden. *State ex rel. Webb v. McCarty*, 208 W. Va. 549, 552, 542 S.E.2d 63, 66 (2000). "Prohibition . . . is an extraordinary remedy, the issuance of which is usually 'reserved for really extraordinary causes.'" *State ex rel. Davidson v. Hoke*, 207 W. Va. 332, 335, 532 S.E.2d 50, 53 (2000) (quoting *State ex rel. Suriano v. Gaughan*, 198 W.Va. 339, 345, 480 S.E.2d 548, 554 (1996) (internal quotations and citations omitted)).

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

7

We review the circuit court's decision that it has subject-matter jurisdiction *de novo*, *State ex rel. Orlofske v. City of Wheeling*, 212 W. Va. 538, 542, 575 S.E.2d 148, 152 (2002), and apply *de novo* review as well to the court's decision addressing the constitutionality of an administrative rule. *Simpson v. W. Va. Off. of Ins. Comm'r*, 223 W. Va. 495, 503-04, 678 S.E.2d 1, 9-10 (2009). We now apply these standards to this case.

### III. Discussion

**A.      This Court's subject-matter jurisdiction.**

We are compelled to pause as we identify a potential impediment to our own jurisdiction. "[T]his Court has a responsibility *sua sponte* to examine the basis of its own jurisdiction." Syl. Pt. 1, in part, *James M.B. v. Carolyn M.*, 193 W. Va. 289, 456 S.E.2d 16 (1995). The Residence-Transfer Rule bars transferring students from playing sports for 365-days from the date of enrollment at a new school without a bona fide change of residence or a waiver. A.B. enrolled in Wheeling Central Catholic on August 25, 2021. Thus, 365-days have passed and A.B. is now eligible to play sports at Wheeling Central Catholic. This means the case before us is technically moot. "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *State ex rel. Bluestone Coal Corp. v. Mazzone*, 226 W. Va. 148, 155, 697 S.E.2d 740, 747 (2010) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969) (internal citation omitted)). Mootness is a jurisdictional question. *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (per curiam). "Generally, moot questions are not proper for consideration by this Court." *State ex rel. Jeanette H. v. Pancake*, 207 W. Va. 154, 159,

8

529 S.E.2d 865, 870 (2000). We have, though, mitigated the mootness rule through Syllabus Point 1 of *Israel by Israel v. West Virginia Secondary School[] Activities Commission*, 182 W. Va. 454, 388 S.E.2d 480 (1989), where we held:

> Three factors to be considered in deciding whether to address technically moot issues are as follows: first, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief; second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public; and third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting and determinate nature, may appropriately be decided.

We conclude we have jurisdiction under the second and third *Israel* factors. Under the second *Israel* factor, A.B. is not the only student affected by the Residence-Transfer Rule and a decision as to the constitutionality of the Residence-Transfer Rule is required for guidance to the bench and to these other students. Under the third *Israel* factor, students challenging the Residence-Transfer Rule will only have 365-days to challenge the permissibility of the Rule. Resolution of such a dispute would necessarily have to occur within that finite 365-day window and that may not be possible. As such, we have jurisdiction.

**B.     The Waiver Rule.**

The circuit court concluded it had the authority to determine whether the WVSSAC's decision to grant a waiver was arbitrary and capricious. Because circuit courts lack jurisdiction to adjudicate as-applied challenges to WVSSAC rules, the circuit court

9

clearly erred as a matter of law in concluding it had such authority. As such, a writ of prohibition is appropriate.

"Nothing in the jurisprudence of this Court supports the trial court's foundational premise that courts are permitted to second guess the manner in which the [WV]SSAC applies its rules." *State ex rel. W. Va. Secondary Sch. Activit[ies] Comm'n v. Webster*, 228 W. Va. 75, 80, 717 S.E.2d 859, 864 (2011). Indeed, our law is to the contrary. "As a general rule courts should not interfere with the internal affairs of school activities commissions or associations." Syl. Pt. 2, *State ex rel. W. Va. Secondary Sch. Activities Comm'n v. Oakley*, 152 W.Va. 533, 164 S.E.2d 775 (1968). Thus, "[c]oincident with the legislative grant of authority to the [WV]SSAC to 'exercise the control, supervision and regulation of all interscholastic athletic events,' [under West Virginia Code § 18-2-25 (2008)], matters falling within the province of the [WV]SSAC's bailiwick are, as a rule, beyond the purview of court interference." *Webster*, 228 W. Va. at 83–84, 717 S.E.2d at 867–68.[4] In Syllabus Point 3 of *Webster* we specifically held:

> Decisions properly within the purview of the legislative grant of authority to the West Virginia Secondary Schools Activities Commission under West Virginia Code § 18–2–25 (2008), such as *the application of WVSSAC Rules* and the review of calls or rulings made by game officials, *are not subject to judicial review*.

---

[4]Identical language is contained in the latest version of West Virginia Code § 18-2-25(b) (2020).

*Id.* at 76, 717 S.E.2d 860 (emphasis added). "By superimposing its judgment on how the [WV]SSAC applied its own rules . . . the trial court exceeded its jurisdiction." *Id*. at 84, 717 S.E.2d at 868 (emphasis deleted). We therefore hold that the WVSSAC is entitled to a writ of prohibition.

## C.     The Residence-Transfer Rule.

While we have held that courts lack jurisdiction over as-applied challenges to WVSSAC rules, we have also found that judicial review is available when a plaintiff claims that a WVSSAC rule is, among other things, facially unconstitutional. "[A] [WV]SSAC rule is subject to challenge, like all properly promulgated legislative rules, on grounds that it exceeds constitutional or statutory authority and for being arbitrary or capricious." *Mayo v. West Virginia Secondary Sch. Activities Comm'n*, 223 W. Va. 88, 95 n.17, 672 S.E.2d 224, 231 n.17 (2008). The circuit court concluded the Residence-Transfer Rule was unconstitutional. We believe the circuit court clearly erred as a matter of law in reaching that conclusion. In so doing, it exceeded its legitimate authority. Therefore, a writ of prohibition should issue.

When presented with an equal protection challenge under the West Virginia Constitution,[5] we first determine which of one of three tests apply: strict scrutiny,

---

[5]The West Virginia Constitution does not contain an equal protection clause. Instead, West Virginia's equal protection principles emanate from the West Virginia Constitution's due process clause. Syl. Pt. 3, *Robertson v. Goldman*, 179 W. Va. 453, 369 S.E.2d 888 (1988) ("The concept of equal protection of the laws is inherent in article three,

11

intermediate scrutiny, or rational basis. *Lewis v. Canaan Valley Resorts, Inc.*, 185 W. Va. 684, 691, 408 S.E.2d 634, 641 (1991). Statutes and administrative regulations challenged as violating equal protection that do not involve a suspect or quasi-suspect class are reviewed under the "highly deferential standard" of the rational basis test. *Appalachian Power Co. v. State Tax Dep't*, 195 W. Va. 573, 594, 466 S.E.2d 424, 445 (1995). A.B. has not argued that students wishing to play school sports constitute a suspect or quasi-suspect class, and the law is contrary to such a finding. *Cf.* Walter T. Champion, Jr., *Fundamentals of Sports Law* § 15:6 (Westlaw Jan. 2022 update) (observing that athletes are not a suspect class). Because students wishing to play high school sports are not a suspect or quasi-suspect class, the rational basis test applies to the Residence-Transfer Rule. *See*, *e.g.*, *In re United States ex rel. Missouri State High Sch. Activities Ass'n*, 682 F.2d 147, 152 (8th Cir. 1982) ("Since athletes are not a suspect class . . . the standard of judicial scrutiny which should be applied is the rational relationship test."); *Parker ex rel. Parker v. Arizona Interscholastic Ass'n, Inc.*, 59 P.3d 806, 812 (Ariz. Ct. App. 2002) ("Because Parker is not a member of a suspect class. . . the rational basis test is the appropriate test to determine whether the transfer rule violated Parker's equal protection rights.").

---

section ten of the West Virginia Constitution, and the scope and application of this protection is coextensive or broader than that of the fourteenth amendment to the United States Constitution."). We have historically drawn on federal case law interpreting federal equal protection principles in interpreting West Virginia's equal protection principles.

A plaintiff challenging a statute or rule under the rational basis test faces "a tremendous uphill battle." *Payne v. Huntington Union Free Sch. Dist.*, 219 F. Supp.2d 273, 284 (E.D.N.Y. 2004). "There is a 'strong presumption of validity' when examining a statute under rational basis review, and the burden is on the party challenging the validity of the legislative action to establish that the statute is unconstitutional." *Maages Auditorium v. Prince George's Cnty*, 4 F. Supp.3d 752, 776 (D. Md. 2014) (citation omitted), *aff'd*, 681 F. App'x 256 (4th Cir. 2017) (per curiam). "To find that a rule or statute is unconstitutional, it must be shown that the rule or statute is unconstitutional beyond a reasonable doubt[.]" *Johnson v. Bd. of Stewards of Charles Town Races*, 225 W. Va. 340, 342, 693 S.E.2d 93, 95 (2010). Consequently, challenges to a statute or rule under rational basis review rarely succeed. *See, e.g., Massachusetts v. United States Dep't of Health & Hum. Servs.*, 682 F.3d 1, 9 (1st Cir. 2012) ("Equal protection claims tested by this rational basis standard . . . rarely succeed."); *Zombro v. Baltimore City Police Dep't*, 868 F.2d 1364, 1376 (4th Cir. 1989) (Murnaghan, J., concurring in part and dissenting in part) ("Under rational basis scrutiny plaintiffs rarely prevail."). This case is not one of those rarities.

Under the rational basis test, a court asks only if the challenged statute or rule "rationally furthers a legitimate state purpose or interest." *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 55 (1973). Rational basis review represents "a paradigm of judicial restraint [,]" *F.C.C. v. Beach Communications., Inc.*, 508 U.S. 307, 314 (1993), as "the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative

13

policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *Lewis*, 185 W.Va. at 692, 408 S.E.2d at 642. "In the ordinary case, a law will be sustained if it can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous." *Romer v. Evans*, 517 U.S. 620, 632 (1996). "In fact, we will not strike down a law as irrational simply because it may not succeed in bringing about the result it seeks to accomplish[.]" *Powers v. Harris*, 379 F.3d 1208, 1217 (10th Cir. 2004). "[I]f the State's purpose is found to be legitimate, the state law stands as long as the burden it imposes is found to be rationally related to that purpose, a relationship that is not difficult to establish." *Metro. Life Ins. Co. v. Ward*, 470 U.S. 869, 881 (1985). An equal protection challenge may not succeed under the rational basis test as long as the question of rational relationship is "at least debatable." *W. & S. Life Ins. Co. v. State Bd. of Equalization*, 451 U.S. 648, 674 (1981) (quoting *United States v. Carolene Prods. Co.*, 304 U.S. 144, 154 (1938)).

In the instant case, we believe the Residence-Transfer Rule meets the minimal constitutional threshold the highly deferential rational basis test imposes. We have recognized that promoting academics over athletics is a legitimate state purpose. *Jones v. West Virginia State Bd. of Educ.,* 218 W. Va. 52, 59, 622 S.E.2d 289, 296 (2005). Allowing students to settle into a new academic environment without the pressure of competing in school sports is rationally related to promoting academics over athletics. The Residence-Transfer Rule eliminates the temptation of a new student to ignore or minimize academic

14

effort and to instead concentrate on sports practice with the goal of earning playing time in a real game.[6] At the very least, this rationale is debatable, which is all that rational basis requires for us to uphold the Residence-Transfer Rule.[7]

Finally, the circuit court was concerned that the Residence-Transfer Rule detrimentally classified certain groups of students compared to other groups of students. It posited several hypothetical scenarios to challenge the Residence-Transfer Rule. Such hypotheticals are not for the courts to consider. "This Court has consistently recognized that 'the classification process is peculiarly a legislative function.'" *Marcus v. Holley*, 217 W. Va. 508, 524, 618 S.E.2d 517, 533 (2005) (quoting *O'Dell v. Town of Gauley Bridge*, 188 W.Va. 596, 602, 425 S.E.2d 551, 557 (1992)); *see also United States R.R. Retirement. Bd. v. Fritz*, 449 U.S. 166, 179 (1980) (internal citation omitted) ("The 'task of classifying

---

[6]We think that Mr. Dolan articulated this rationale, if somewhat inchoately, in the preliminary injunction hearing before the circuit court. Even if not, "this court must independently consider whether there is any conceivable rational basis for the classification, regardless of whether the reason ultimately relied on is provided by the parties or the court." *Teigen v. Renfrow*, 511 F.3d 1072, 1084 (10th Cir. 2007); *see also Starlight Sugar, Inc. v. Soto*, 253 F.3d 137, 146 (1st Cir. 2001) (recognizing that even if the government's stated justification for enforcing a regulation is insufficient to uphold the rationality of the regulation, a court has the obligation to seek out other conceivable reasons validating the regulation).

[7]Our decision that there is a rational basis for the Residence-Transfer Rule also deals with any claim the rule is arbitrary and capricious. *Jones*, 218 W. Va. at 62, 622 S.E.2d at 299 ("Our discussion under the 'Equal Protection' portion of this opinion, Section III.B., *supra,* demonstrates that this rule is not arbitrary or capricious as it is rationally related to the legitimate state purposes of promoting academics over athletics and protecting the economic interests of the county school systems.").

15

persons for . . . benefits . . . inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line,' and the fact the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration."). Where no suspect or quasi-suspect class is concerned, legislative bodies have wide latitude in making classifications. *See*, *e.g.*, *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985) ("When social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude[.]"). "The problems of government are practical ones and may justify, if they do not require, rough accommodations-illogical, it may be, and unscientific." *Metropolis Theater Co. v. City of Chicago*, 228 U.S. 61, 69–70 (1913). Consequently, "[i]n the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect." *Dandridge v. Williams*, 397 U.S. 471, 485 (1970). "Even if the classification involved here is to some extent both underinclusive and overinclusive, and hence the line drawn . . . imperfect, it is nevertheless the rule that in a case like this 'perfection is by no means required.'" *Vance v. Bradley*, 440 U.S. 93, 108 (1979) (quoting *Phillips Chem. Co. v. Dumas Sch. Dist.*, 361 U.S. 376, 385 (1960)). As we said in addressing a different type of residency requirement:

> There is no doubt that the residency requirement here is not perfectly designed to achieve its purposes. It is also undisputed that the [legislating body] could have crafted a more restrictive requirement better suited to its purposes. These considerations, however, are not relevant to the constitutional inquiry called for in this case.

16

*Morgan v. City of Wheeling*, 205 W. Va. 34, 45, 516 S.E.2d 48, 59 (1999). We agree with

the United States Court of Appeal for the Eighth Circuit when it found a residence-transfer

rule constitutional:

> Whether the rule is wise or creates undue individual hardship are policy decisions better left to legislative and administrative bodies. Schools themselves are by far the better agencies to devise rules and restrictions governing extracurricular activities. Judicial intervention in school policy should always be reduced to a minimum.

*Missouri State High Sch. Activities Ass'n*, 682 F.2d at 152–53 (footnote omitted).[8]

We therefore hold that the West Virginia Secondary School Activities

Commission's Residence-Transfer Rule, West Virginia Code of State Rules § 127-2-7.2.a

(2021), is neither arbitrary and capricious nor a violation of equal protection. Given the

---

[8]A.B. asserts three other Wheeling Central Catholic students, who sought to intervene in A.B.'s circuit court injunction case after they had been denied a waiver from the WVSSAC, were allowed to play softball at Wheeling Central Catholic. A.B. tries to support the assertion that these students played softball by citing to two stipulations of dismissal which A.B. attached as exhibits to her summary response. We give these exhibits (and by extension A.B.'s argument supported by them) no consideration. First, these exhibits are not properly before this Court since they were not presented to us as a supplemental appendix record. *See, e.g.*, *Smith v. Smith*, No. 14-0759, 2015 WL 3688867, at *1 n.1 (W. Va. June 15, 2015) (memorandum decision) ("Respondent also filed eight 'exhibits' attached to, and cited throughout, his response. As respondent filed no motion with these 'exhibits' and the same do not comply with the Rules of Appellate Procedure, we decline to consider those items not provided in the appendix record and all references thereto in respondent's brief."). Second, the terms of the settlements are not included in the exhibits and there is nothing else in the exhibits proving the students did play softball for Wheeling Central Catholic. Thus, the only basis for saying these students played softball is counsel's representations, which are not evidence. *State v. Benny W.*, 242 W. Va. 618, 629, 837 S.E.2d 679, 690 (2019).

circuit court's clear legal error in concluding otherwise, we grant the WVSSAC its requested writ of prohibition and dissolve the circuit court's preliminary injunction.

## IV. Conclusion

For the foregoing reasons, we grant the requested writ of prohibition and dissolve the circuit court's March 4, 2022, preliminary injunction.

Writ granted.