473 S.E.2d 151

**Lori K. PINSON and Larry Pinson, Plaintiffs Below, Appellants,**

v.

**CANAAN VALLEY RESORTS, INC., a New Hampshire Corporation; West Virginia Division of Natural Resources; and West Virginia Division of Tourism and Parks, Defendants Below, Appellees.**

**No. 23272.**

Supreme Court of Appeals of West Virginia.

Submitted May 1, 1996.

Decided June 14, 1996.

Mark E. Troy, Thaxton & Johnstone, Timothy J. LaFon, Michael J. Del Giudice, Ciccarello, Del Giudice & LaFon, Charleston, for Appellants.

Robert M. Steptoe, Jr., John R. Merinar, Jr., Steptoe & Johnson, Clarksburg, for Appellees.

PER CURIAM:

This action is before this Court upon appeal from the final order of the Circuit Court of Kanawha County, West Virginia, entered on May 31, 1995. The action concerns a complaint filed by the appellants, Lori K. Pinson and Larry Pinson, against the appellees, Canaan Valley Resorts, Inc., the West Virginia Division of Natural Resources and the West Virginia Division of Tourism and Parks, with regard to a skiing accident at Canaan Valley State Park. As reflected in the final order, the circuit court, citing the West Virginia Skiing Responsibility Act, *W. Va.Code*, 20–3A–1 [1984], *et seq.*, granted summary judgment for the appellees.

This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. For the reasons stated below, the final order of the circuit court is affirmed.

I

In January 1991, Lori K. Pinson and Larry Pinson, her husband, went from their home in Nitro, West Virginia, to Canaan Valley State Park in Tucker County, West Virginia, for a ski trip. According to her deposition, Ms. Pinson had been skiing since 1979 or 1980, and, although she had never taken lessons from a ski instructor, she considered herself to be an "intermediate" skier. She had skied at Canaan Valley State Park on prior occasions.

On this trip, Ms. Pinson and Mr. Pinson first skied on the evening of January 19, 1991. They did not ski the following day. On January 21, 1991, the Pinsons began skiing at noon and skied several trails which had been designated by the Park as "easiest." At approximately 2:00 p.m. that day, the Pinsons rode a chair lift farther up the mountain and began skiing down a declivity or trail known as "Snowfields." The Snowfields trail had been designated "more difficult." Importantly, about 12 to 16 inches of

snow had fallen at the Park since the night before and was continuing at a "steady" rate.[1]

Although the trails the Pinsons had skied earlier that day had been groomed or packed by Park employees prior to the opening of the ski facility that morning, the Pinsons encountered deep, ungroomed natural snow when they descended the Snowfields trail. According to Ms. Pinson, the ungroomed condition of the Snowfields trail caused her to lose control of her skis, resulting in a fall and a severe fracture of her left leg.[2]

The evidence reveals that there was no notice of any kind within the Park indicating to skiers which trails had been groomed and which trails remained ungroomed. The appellees stated generally, however, that some trails were left ungroomed because many skiers enjoy skiing upon ungroomed or powdered snow. Moreover, according to the appellees, grooming was done less often upon trails, such as the Snowfields trail, which were not subject to frequent artificial snowmaking processes. In any event, the appellees state, skiers at Canaan Valley State Park were notified by way of statements upon lift tickets, trail maps and the Park's "reader board" as to which trails were open, and the degree of difficulty of each, and that skiers have the responsibility to ski under control and be aware of changing conditions at the Park.

In November 1993, Lori K. Pinson and Larry Pinson filed a complaint in the circuit court alleging that Ms. Pinson's injury was caused when she "found herself suddenly and without warning on a portion of a ski trail which was composed of deep ungroomed natural snow." The damages sought by the Pinsons included amounts for medical expenses, pain and suffering and loss of consortium. Canaan Valley Resorts, Inc., a private operator of the ski area, and its licensor, the West Virginia Division of Tourism and Parks, were joined as defendants. Also joined as a defendant was the West Virginia Department of Natural Resources, the owner of the land comprising Canaan Valley State Park. As stated above, those three entities are the appellees herein.

On November 7, 1994, the appellees filed a joint motion for summary judgment, *W. Va. R. Civ. P.* 56, in which they alleged that, pursuant to the West Virginia Skiing Responsibility Act, *W. Va. Code*, 20-3A-1 [1984], *et seq.*, they were not liable to the appellants. The circuit court agreed and granted summary judgment for the appellees. Specifically, the circuit court concluded that pursuant to *W. Va. Code*, 20-3A-3(8) [1984], and *W. Va. Code*, 20-3A-5 [1984], of the Act, ski-

1. In her deposition, Lori K. Pinson stated as follows:

 Q. When you got on the slope around noon, what were the weather conditions like?
 A. Cold, snowing.
 Q. Was it snowing hard or was it general snow?
 A. Hard, not blizzard hard, but steady.
 Q. Had it been snowing earlier that day? Do you know?
 A. I don't know. It had snowed a lot the night before, in the middle of the night while we were asleep.
 Q. About how much snow had accumulated? Can you give an estimate?
 A. A foot. It's an estimate.
 Q. Did it continue to snow steadily up until the time that you were injured?
 A. Yes.

2. During her deposition, Ms. Pinson indicated that in the course of falling she attempted to turn but was again prevented from controlling her skis because of the ungroomed snow. Attributing her fall to the ungroomed snow, she stated:

 Q. Now, is it your contention, then, that the deep, ungroomed snow prevented you from making the turn?
 A. Yes.
 Q. Was there any snow making going on anywhere nearby?
 A. No.
 Q. Was this natural snow?
 A. Yes.
 Q. Is it your belief that this trail should have been closed because of the natural snow?
 A. Yes.
 Q. Is there any other reason why you feel this trail should have been closed? Any other danger that the trail presented, aside from the natural snow?
 A. Ask that again.
 Q. Well, aside from the natural snow, is there any other reason why you feel the trail should have been closed? For example, were there rocks on the trail or was there a groomer parked on the—
 A. A tree or something like that?
 Q. Was there anything else that you saw as a problem?
 A. Not anything that I saw.

ers, rather than ski area operators, are responsible for injuries caused by "variations in terrain; surface or subsurface snow or ice conditions" and that such variations or conditions, in the form of ungroomed snow, caused the injury to Ms. Pinson.

## II

The legislative purpose of the West Virginia Skiing Responsibility Act is set forth in *W. Va.Code*, 20–3A–1 [1984]. In that section, it is recognized that there are "inherent risks" in the sport of skiing and that the purpose of the Act is to "define those areas of responsibility and affirmative acts for which ski area operators shall be liable for loss, damage or injury and those risks which the skier expressly assumes for which there can be no recovery." With regard to the responsibility of ski area operators, *W. Va. Code*, 20–3A–3(8) [1984], provides, in relevant part, that ski area operators are to "[m]aintain the ski areas in a reasonably safe condition, except that such operator shall not be responsible for any injury, loss or damage caused by the following: Variations in terrain; surface or subsurface snow or ice conditions [.]" [3]

Similarly, *W. Va.Code*, 20–3A–5 [1984], provides:

Each skier expressly assumes the risk of and legal responsibility for any injury, loss or damage to person or property which results from participation in the sport of skiing including, but not limited to, any injury, loss or damage caused by the following: Variations in terrain; surface or subsurface snow or ice conditions [.]

Moreover, in *W. Va.Code*, 20–3A–5 [1984], it is expressly recognized that "skiing as a recreational sport is hazardous to skiers, regardless of all feasible safety measures which can be taken." Furthermore, that section states that each skier "shall have the sole individual responsibility for knowing the range of his own ability to negotiate any slope or trail, and it shall be the duty of each skier to ski within the limits of the skier's own ability[.]"

Here, the appellants, citing the Act, contend that genuine issues of fact exist concerning whether the appellees maintained the Canaan Valley State Park ski area "in a reasonably safe condition" and that, accordingly, the circuit court committed reversible error in granting summary judgment. In particular, the appellants assert that the excess, ungroomed natural snow upon the Snowfields trail on January 21, 1991, could have been eliminated by grooming, as Park employees had done with regard to other ski trails. In the alternative, suggest the appellants, warnings concerning the ungroomed snow could have been posted for the benefit of skiers, or the Snowfields trail could have been temporarily closed. On the other hand, the appellees contend, as they did below, that they have no liability under the circumstances of this action, inasmuch as the Act provides that ski area operators are not responsible for injuries caused by "variations in terrain; surface or subsurface snow or ice conditions."

 Our standards of review concerning summary judgments are, of course, well settled. As this Court stated in syllabus point 3 of *Aetna Casualty and Surety Co. v. Federal Insurance Co.*, 148 W.Va. 160, 133 S.E.2d 770 (1963): "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *See also* syl. pt. 1, *Dawson v. Norfolk and Western Railway*, 197 W.Va. 10, 475 S.E.2d 10 (1996); syl. pt. 2, *Rose v. Oneida Coal Co.*, 195 W.Va. 726, 466 S.E.2d 794 (1995); *Payne v. Weston*, 195 W.Va. 502, 506, 466 S.E.2d 161, 165 (1995); syl. pt. 3, *Gooch v. Department of Public Safety*, 195 W.Va. 357, 465 S.E.2d 628 (1995); syl. pt. 2, *Graham v. Graham*, 195 W.Va. 343, 465 S.E.2d 614 (1995); syl. pt. 1, *HN Corp. v. Cyprus Kanawha Corp.*, 195 W.Va. 289, 465 S.E.2d 391 (1995). Moreover, as we recently observed in syllabus point 2 of *Williams v. Precision*

---

**3.** According to *W. Va.Code*, 20–3A–6 [1984], "[a]ny ski area operator shall be liable for injury, loss or damage caused by failure to follow the duties set forth in section three [§ 20–3A–3] of this article where the violation of duty is causally related to the injury, loss or damage suffered."

**440**

*Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995):

> Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

*See also* syl. pt. 2, *Dawson, supra;* syl. pt. 2, *Cavender v. Fouty,* 195 W.Va. 94, 464 S.E.2d 736 (1995); *Neary v. Charleston Area Medical Center,* 194 W.Va. 329, 333, 460 S.E.2d 464, 468 (1995); syl. pt. 2, *Cox v. State,* 194 W.Va. 210, 460 S.E.2d 25 (1995). In addition, as this Court stated in syllabus point 1 of *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994): "A circuit court's entry of summary judgment is reviewed *de novo.*" *See also Morton v. Amos–Lee Securities,* 195 W.Va. 691, 696, 466 S.E.2d 542, 547 (1995); *Farley v. Sartin,* 195 W.Va. 671, 673, 466 S.E.2d 522, 524 (1995); *McKenzie v. Cherry River Coal & Coke Co.,* 195 W.Va. 742, 745, 466 S.E.2d 810, 813 (1995); syl. pt. 1, *Cox v. Amick,* 195 W.Va. 608, 466 S.E.2d 459 (1995).

In *Lewis v. Canaan Valley Resorts, Inc.,* 185 W.Va. 684, 408 S.E.2d 634 (1991), this Court considered the constitutionality of the West Virginia Skiing Responsibility Act. In *Lewis,* a skier sustained personal injuries while disembarking from a ski lift at Canaan Valley State Park. According to the skier, the accident was caused by the accumulation of ice in the ski lift dismount area. Declaring the Act to be facially constitutional, which was the sole issue before this Court in *Lewis,* we held in syllabus point 3:

> The West Virginia Skiing Responsibility Act, *W. Va.Code,* 20–3A–1 to 20–3A–8 [1984], which immunizes ski area operators from tort liability for the inherent risks in the sport of skiing which are essentially impossible for the operators to eliminate, does not violate equal protection principles of article III, sec. 10 of the *Constitution of West Virginia* or of the fourteenth amendment to the *Constitution of the United States.* The Act similarly does not constitute special legislation in violation of article

VI, section 39 of the *Constitution of West Virginia.*

In so holding, we noted, in *Lewis,* that *W. Va.Code,* 20–3A–3(8) [1984], "expressly absolves the ski area operator of any liability for any injury caused by certain ski area conditions, such as surface or subsurface snow or ice conditions." 185 W.Va. at 687, 408 S.E.2d at 637. Specifically, as this Court observed in note 12 of the *Lewis* opinion:

> [A] ski area operator would not be liable, under the explicit exception provisions of the Act, for injuries or damages sustained by a skier or tramway passenger which were caused by, for example, surface or subsurface snow or ice conditions, because they are inherent risks essentially impossible for the ski area operator to eliminate, even with 'reasonable' maintenance.

185 W.Va. at 693 n. 12, 408 S.E.2d at 643 n. 12.

The West Virginia Skiing Responsibility Act was also addressed in *Hardin v. Ski Venture, Inc.,* 848 F.Supp. 58 (N.D.W.Va. 1994), relied upon by the appellants. In *Hardin,* the plaintiff asserted that a snow making machine at Snowshoe Resort in West Virginia was improperly placed, blowing directly into the face of skiers descending a particular trail. According to the plaintiff, the machine threw "excessively wet snow" upon the plaintiff's goggles, obstructing his vision, and causing him to collide with a tree. As a result of the collision, the plaintiff was rendered a quadriplegic. Discussing the various provisions of the West Virginia Skiing Responsibility Act, the court, in *Hardin,* denied the ski operator's motion for summary judgment and stated: "In the present case, it is alleged that the defendant negligently engaged in snow-making activity and that the alleged dangerous condition could have been eliminated if the defendant had reasonably maintained the snow-making equipment. These allegations present questions of fact which compel further development." 848 F.Supp. at 62.

On the other hand, a summary judgment for ski operators was affirmed in *Philippi v. Sipapu, Inc.,* 961 F.2d 1492 (10th Cir.1992). In *Philippi,* a novice skier taking a ski lesson

fell and injured his right leg and knee, while skiing upon "a narrow, steep, ungroomed slope which required numerous turns to navigate." In considering the New Mexico Ski Safety Act, which provided, as does this State's Act, that skiers assume the responsibility for injury caused by "variations in terrain; surface or subsurface snow or ice conditions," the court, in *Philippi*, concluded that the plaintiff was responsible for his own injuries under those circumstances. 961 F.2d at 1495. *See also Wright v. Mt. Mansfield Lift*, 96 F.Supp. 786, 791 (D.Vt.1951): To hold that the terrain of a ski trail down a mountain "with fluctuation in weather and snow conditions that constantly change its appearance and slipperiness" should be kept level and smooth would be to demand the impossible; Lori J. Henkel, Annotation, *Ski Resort's Liability for Skier's Injuries Resulting from Condition of Ski Run or Slope*, 55 A.L.R.4th 632 (1987); J.E. Leonarz, Annotation, *Liability of Operator of Skiing, Tobogganing, or Bobsledding Facilities for Injury to Patron or Participant*, 94 A.L.R.2d 1431 (1964).

Unlike the facts in *Hardin, supra*, there is no allegation herein that the appellees negligently engaged in snow-making activity. In fact, Ms. Pinson indicated in her deposition that there were no snow groomers or other possible obstructions present in the vicinity of her accident. *See* n. 2, *supra*. Rather, Ms. Pinson attributes her fall solely to the presence of deep, ungroomed natural snow upon the Snowfields trail. In that regard, it should be noted that it was snowing "steadily" on January 21, 1991, up until the time of the accident, *see* n. 1, *supra*, and, although some trails had been groomed that day, the appellees notified skiers generally to be aware of changing conditions. Clearly, those circumstances lack the compelling quality which in *Hardin* resulted in a denial of summary judgment.

While we need not definitively or preemptively settle here the question of a ski operator's responsibility for every possible condition naturally occurring upon a ski trail, we recognize that the West Virginia Skiing Responsibility Act sets forth an *a priori* standard of exemption, concerning "variations in terrain; surface or subsurface snow or ice conditions," which governs our review in this action. That exemption is, no doubt, a pragmatic response by the legislature to the mutability of snow conditions upon ski slopes and to the concomitant "inherent risks" of the sport of skiing. *See W. Va.Code*, 20–3A–1 [1984]. Thus, the circuit court was correct in its conclusion that pursuant to *W. Va.Code*, 20–3A–3(8) [1984], and *W. Va.Code*, 20–3A–5 [1984], of the Act, skiers, rather than ski area operators, are responsible for injuries caused by "variations in terrain; surface or subsurface snow or ice conditions" and that such variations or conditions, in the form of ungroomed snow, caused the injury to Ms. Pinson. Nor does the Act require the posting of warnings concerning the presence of ungroomed snow or require that ski trails be closed because of ungroomed snow.

Accordingly, the final order of the Circuit Court of Kanawha County, entered on May 31, 1995, is affirmed.

Affirmed.