# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Glen Addis and Pamela Addis,**
**Plaintiffs Below, Petitioners**

**vs) No. 12-1537** (Pocahontas County 10-C-69)

**Snowshoe Mountain, Inc., a West Virginia corporation,**
**Defendant Below, Respondent**

**FILED**

November 22, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioners Glen and Pamela Addis, by counsel John F. McCuskey, Roberta F. Green, and Heather B. Osborn, appeal the order of the Circuit Court of Pocahontas County, entered November 28, 2012, granting summary judgment in favor of Respondent Snowshoe Mountain, Inc. Respondent appears by counsel Robert M. Steptoe, Amy M. Smith, and Matthew B. Hansberry.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioners filed a complaint and amended complaint in the Circuit Court of Kanawha County based on injuries Petitioner Glen Addis received after skiing over and slipping on ice on a double black diamond trail called Lower Shay's Revenge at respondent's ski resort.[1] The civil action was transferred to the Circuit Court of Pocahontas County upon the court's grant of respondent's motion to dismiss for improper venue, or in the alternative, transfer. Respondent filed a motion for summary judgment after the close of discovery, and the circuit court granted the motion by order entered November 28, 2012, on the grounds that petitioners' claims are barred by the West Virginia Skiing Responsibility Act and by release and waiver language contained in an agreement signed by petitioner.[2] Petitioners appealed the grant of summary judgment to this Court.

---

[1]The "double black diamond" designation indicates that the trail is "extremely difficult" and is intended for "advanced" skiers.

[2]The sole claim of Petitioner Pamela Addis was loss of consortium. The circuit court correctly noted that it was entirely derivative of her husband's claims.

1

The material facts are not in dispute. Petitioner Glen Addis entered respondent's resort the day of his accident using a season pass. In obtaining that pass, petitioner signed the following agreement:

> I understand and accept the fact that skiing, snowboarding, bicycling, and golf in their various forms are INHERENTLY DANGEROUS AND HAZARDOUS sports that have many dangers and risks. I realize that injuries are a common and ordinary occurrence of these sports. I agree, as a condition of being allowed to use the resort's facilities and premises, that I freely accept and voluntarily assume all risks of personal injury or death or property damage, and release Snowshoe Mountain, Inc. and its agents, employees, directors, officers, and shareholders from any and all liability for personal injury or property damage which results in any way from negligence, conditions on or about the premises and facilities, the operations of the resort including, but not limited to, grooming, snowmaking, ski lift operations, trail maintenance, golf operations, the actions or omissions of employees or agents of Snowshoe or my participation in skiing or other activities in the area, accepting myself the full responsibility for any and all such damage or injury of any kind which may result.

> I further understand and accept that there may be exposure to other dangers or hazards including, but not limited to, the following: riding and disembarking the ski lifts, changing weather conditions, loss of balance or control, rocks, roots, stumps, trees, forest debris, creeks and streams, natural and manmade objects, bare spots, blind spots, reduced visibility (for any reason), and the actions of other guests or employees.

> I, the undersigned, have read, understood, and agree to accept the terms of this RELEASE AND AGREEMENT NOT TO SUE. I am signing it freely and of my own accord realizing it is binding upon my heirs, my assigns, and myself. . . .

> I shall support the Responsibility Code and understand that skiing, snowboarding, bicycling and golf are inherently dangerous sports and I freely and voluntarily accept all of the inherent risks and responsibilities associated with these sports.

Petitioner is an experienced skier and former ski instructor, and he had skied Lower Shay's Revenge many times prior to the accident that is the subject of this claim. His fall occurred on his second run on that trail on the morning of January 24, 2009. On his earlier run, petitioner observed that the trail was not well-groomed, was icy, and had large mounds of snow.[3] He did not, however, report the condition of the trail to ski patrol. Petitioner approached an icy mound on his second run, and his right ski became dislodged. He then stopped on a "very steep slope" and, while attempting to put his ski back on, he slipped on ice, over a drop-off, and into the nearby wooded area. Petitioner struck a tree, fracturing both femurs and his pelvis.

---

[3]Petitioner was also aware, however, that other nearby trails were groomed, inasmuch as he had skied several earlier that morning.

2

On appeal, petitioners assert two assignments of error. First, they argue that the circuit court improperly construed the West Virginia Skiing Responsibility Act. Second, they argue that the circuit court misapplied West Virginia law on pre-injury exculpatory clauses and thereby violated their constitutional rights in granting summary judgment. "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192, W.Va. 189, 451 S.E.2d 755 (1994). The non-moving party may only defeat a motion for summary judgment by offering some concrete evidence from which a reasonable fact finder could return a verdict in his favor. *See Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995). Mindful of this standard, we consider petitioners' arguments.

The West Virginia Skiing Responsibility Act provides in part:

§20-3A-3. *Duties of ski area operators with respect to ski areas*.
Every ski area operator shall:
. . .
(8) Maintain the ski areas in a reasonably safe condition, except that such operator shall not be responsible for any injury, loss or damage caused by the following: variations in terrain; surface or subsurface snow or ice conditions; bare spots, rocks, trees, other forms of forest growth or debris; collisions with pole lines, lift towers or any components thereof; or, collisions with snowmaking equipment which is marked by a visible sign or other warning implement in compliance with subdivision (2) of this section.
. . .
§20-3A-5. *Duties of skiers.*
(a) It is recognized that skiing as a recreational sport is hazardous to skiers, regardless of all feasible safety measures which can be taken. Each skier expressly assumes the risk of and legal responsibility for any injury, loss or damage to person or property which results from participation in the sport of skiing including, but not limited to, any injury, loss or damage caused by the following: Variations in terrain including freestyle terrain; surface or subsurface snow or ice conditions; bare spots, rocks, trees, other forms of forest growth or debris; collisions with pole lines, lift towers or any component thereof; or, collisions with snowmaking equipment which is marked by a visible sign or other warning implement in compliance with section three of this article. Each skier shall have the sole individual responsibility for knowing the range of his or her own ability to negotiate any ski slope or trail, and it shall be the duty of each skier to ski within the limits of the skier's own ability, to maintain reasonable control of speed and course at all times while skiing, to heed all posted warnings, to ski only on a skiing area designated by the ski area operator and to refrain from acting in a manner which may cause or contribute to the injury of anyone. If while actually skiing, any skier collides with any object or person, except an obviously intoxicated person of whom the ski area operator is aware, the responsibility for such collision shall be solely that of the skier or skiers involved and not that of the ski area operator.

Petitioners argue that respondent lost the protection of the Act by failing to monitor

3

weather information, failing to stop malfunctioning snowmaking equipment, failing to train ski patrol, and failing to mark hazards. We find no evidence in the record to support any such asserted failure, and petitioners direct our attention to none.[4] Central to each of petitioners' assertions is their supposition that the air temperature was warmer than 32 degrees Fahrenheit at key times on the days around petitioner's accident, causing respondent's snowmaking equipment to blow water, rather than snow, which created ice on the trail. The only evidence of the temperature, however, is a three-page climate data report of the National Weather Service setting out the minimum and maximum daily area temperatures for the month of January of 2009. While that report shows that the maximum temperature reached 42 degrees Fahrenheit on the day of petitioner's accident, there is no evidence that respondent's equipment malfunctioned as a result of that temperature, or that the equipment was improvidently used.

Petitioners liken their situation to *Hardin v. Ski Venture, Inc.,* 848 F.Supp. 58 (N.D. W.Va. 1994), a case in which a defendant ski resort was denied summary judgment because there was evidence that defendant's malfunctioning snowmaking equipment blew "excessively wet snow" into plaintiff's goggles, obstructing his vision and ultimately causing the collision that rendered him quadriplegic.[5] But here, where petitioners have made only broad accusations of "failure," and offered unsupported conjecture, petitioners have presented no facts to significantly distinguish this case from *Pinson v. Canaan Valley Resorts, Inc.*, 196 W.Va. 436, 473 S.E.2d 151 (1996), wherein a plaintiff sued a ski resort for injuries she received while skiing on ungroomed, natural snow. In that case, we ultimately determined that "skiers, rather than ski area operators, are responsible for injuries caused by 'variations in terrain; surface or subsurface snow or ice conditions' and that such variations or conditions . . . caused the injury to" that plaintiff. Similarly, we find that petitioner is responsible for his injury, inasmuch as the evidence shows only that it was caused by conditions of the terrain.

Petitioners' second assignment of error is that the circuit court misapplied our law on pre-injury exculpatory clauses. Their sole argument before this Court is that the circuit court failed to recognize, based on *Murphy v. North American River Runners, Inc.*, 186 W.Va. 310, 412 S.E.2d 504 (1991), that exculpatory clauses do not provide immunity to operators who violate a statutory safety standard. Inasmuch as we have determined herein that there is no evidence of respondent's acting contrary to its duty set forth in the West Virginia Skiing Responsibility Act, petitioners cannot prevail on this ground.

For the foregoing reasons, we affirm.

Affirmed.

---

[4]Petitioners' citations to their own pleadings or arguments below, rather than specific testimony or evidence, to establish the events giving rise to this action is insufficient.

[5]In their reply brief, petitioners state that they, like the *Hardin* plaintiffs, "had retained an expert who was prepared to identify the operator's failures that led to the injuries alleged." They further explain that it was that expert testimony in *Hardin* that created a factual dispute concerning the cause of the accident. The Court has been unable to find such expert testimony in the appendix record for this case.

4

**ISSUED:**  November 22, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II