**STATE OF WEST VIRGINIA**

**FILED**

**May 23, 2024**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**Thomas B., individually and as
parent and next friend of A.B.,
a minor,
Plaintiff Below, Petitioner**

**v) No. 22-0468** (Tucker County 21-C-4)

**U.S. Hotel and Resort Management, Inc., and
Regency Hotel Management, LLC,
Defendants Below, Respondents**

## MEMORANDUM DECISION

Petitioner Thomas B., individually and as parent and next friend of A.B., a minor, appeals the Circuit Court of Tucker County's May 23, 2022, order dismissing his complaint against Respondents U.S. Hotel and Resort Management, Inc., and Regency Hotel Management, LLC, for injuries A.B. suffered at the snow tubing park at Canaan Valley Resort and Conference Center ("the resort"). A.B. was struck forcefully from behind by another snow tuber alleged to have been sent down the tubing lane by respondents' employee before A.B. had cleared her lane. The circuit court ruled that respondents are immune from liability for A.B.'s injuries pursuant to the West Virginia Skiing Responsibility Act ("the Act").[1] On appeal, petitioner contends that dismissal of his complaint was in error because he sufficiently pled that respondents failed in their statutory duty to maintain the snow tubing area in a reasonably safe condition because, but for respondents' negligence, the collision that seriously injured A.B. would never have occurred.

Upon our review, we find that the circuit court clearly erred in dismissing petitioner's complaint. Accordingly, this case satisfies the "limited circumstance" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for reversal and remand by memorandum decision.[2]

---

[1] *See* W. Va. Code §§ 20-3A-1 through -9.

[2] Petitioner appears by counsel William C. Brewer, Esquire, and Ramsey K. Jorgensen, Esquire. Respondents are represented by counsel John R. Merinar, Jr., Esquire, and Bonnie J. Thomas, Esquire.

At this stage of the proceedings, we are required to accept as true the factual allegations of the complaint. "Since the preference is to decide cases on their merits, courts presented with a motion to dismiss for failure to state a claim construe the complaint in the light most favorable to the plaintiff, taking all allegations as true." *Sedlock v. Moyle*, 222 W. Va. 547, 550, 668 S.E.2d 176, 179 (2008). Accordingly, we derive the relevant facts from the allegations as presented in petitioner's complaint.

The complaint alleges that the snow tubing park at the resort has "multiple man-made lanes of packed snow[,]" and "the snow is packed to maximize speed." The tubing lanes are separated from the ski slopes and "were constructed to prevent snow tubers from hitting one another." The snow tubes used at the tubing park "do not have a steering mechanism or a mechanism to slow them or stop them." Other than requiring that snow tubers be at least four years old and at least forty-two inches tall, "[t]here are very few requirements that must be met for a guest to participate" at the tubing park. Children are permitted to snow tube unaccompanied by an adult.

The complaint alleges that, at the resort, respondents stationed an employee, agent and/or representative at the top of the tubing run "where snow tubers begin their descent. . . . [I]t is this employee's duty to monitor guests at the top of the hill. . . . [and] to indicate to [tubers] when the [tuber] or [tubers] in front of them have cleared the lane making it safe for them [to] begin their descent."

On January 27, 2019, petitioner took his daughter, A.B., and her two siblings to the tubing park. Prior to purchasing tickets, petitioner alleges, he informed the attendant that his children were minors and that A.B. has "special needs." According to the complaint, petitioner was advised that it was safe for A.B. and her siblings to snow tube without being accompanied by an adult. After A.B.'s second run down the hill, another tuber struck her from behind because, the complaint alleges, respondents' employee who was stationed at the top of the hill sent that tuber down the hill behind A.B. before she had cleared her lane. As a result of the collision, A.B. was forcefully knocked on her back. As A.B. laid unconscious and bleeding from her mouth, respondents' employee continued to send additional tubers down the same tubing lane, almost striking A.B. a second time. Respondents failed to intervene or render any assistance to A.B. or her family. An unidentified resort guest called 9-1-1, and A.B. was transported to a hospital. She sustained an intracranial hemorrhage.

Petitioner subsequently instituted this civil action against respondents alleging that they breached their duty to operate and maintain the snow tubing park at the resort in a reasonably safe manner by (1) failing to train and supervise resort personnel including training employees to keep a proper lookout at the snow tubing park and to monitor and direct snow tubers in a manner to avoid colliding with other tubers, (2) permitting snow tubers to proceed down the hill before A.B. had cleared her lane, and (3) failing to keep a proper lookout and safely direct tubers, including minors and those with special needs, who were utilizing the snow tubing park. Petitioner alleges that respondents' negligent and reckless conduct directly and proximately caused A.B.'s injuries.

Respondents filed a motion to dismiss the complaint, arguing that because petitioner's claims stem from another tuber's[3] collision with A.B., the claims are barred under the West Virginia Skiing Responsibility Act. Respondents argued that the Act provides that responsibility for a collision between snow tubers is solely that of the tubers involved "and not that of the ski area operator."[4] W. Va. Code § 20-3A-5(a).[5] As such, respondents argued, petitioner failed to state a claim upon which relief could be granted and dismissal pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure was appropriate.

In granting the motion to dismiss,[6] the circuit court acknowledged that the Act imposes upon ski area operators the duty to "[m]aintain the ski areas in a reasonably safe condition[,]" W. Va. Code § 20-3A-3(8), but concluded that the Act also places the duty upon skiers to maintain control at all times as to their own speed and course and to avoid other skiers and objects. *See* W. Va. Code § 20-3A-5(f). The circuit court agreed with respondents that the responsibility for collisions between skiers is solely that of the skiers involved. *See* W. Va. Code § 20-3A-5(a). The court ruled that a ski area operator's statutory duty to maintain the ski areas in a reasonably safe condition "d[oes] not extend to risks for which [the ski area operator] i[s] specifically immunized, such as the risk of collisions between tubers." It is from this order dismissing the complaint that petitioner now appeals.

"Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995). When considering a motion to dismiss, "Rule 8(f) of the West Virginia Rules of Civil Procedure dictates that courts liberally construe pleadings so 'as to do substantial justice[,]'" *Mountaineer Fire & Rescue Equip., LLC v. City Nat'l Bank of W. Va.*, 244 W. Va. 508, 520, 854 S.E.2d 870, 882 (2020), and so "'[t]he trial court, in appraising the sufficiency of a

---

[3] The Act defines "skier" as "any person present at a skiing area under the control of a ski area operator for the purpose of engaging in the sport of skiing . . . ." W. Va. Code § 20-3A-2(h). Under the Act, tubing constitutes "skiing." *See* W. Va. Code § 20-3A-2(i) ("'Skiing' means sliding downhill or jumping on snow or ice on . . . a tube . . . .").

[4] "Ski area operator" is defined in the Act as "any person, partnership, corporation or other commercial entity and their agents, officers, employees or representatives, or the State of West Virginia, or any political subdivision, thereof, who has operational responsibility for any ski area or aerial passenger tramway." W. Va. Code § 20-3A-2(f).

[5] West Virginia Code § 20-3A-5(a) provides, in part: "If while actually skiing, any skier collides with any object or person, except an obviously intoxicated person of whom the ski area operator is aware, the responsibility for such collision shall be solely that of the skier or skiers involved and not that of the ski area operator." Petitioner does not allege that an intoxicated skier was involved in the collision that injured A.B.

[6] The circuit court's order dismissing the complaint indicates that the court conducted a hearing on the motion; however, a transcript of the hearing is not included in the record on appeal.

complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Syl. Pt. 3, *Chapman v. Kane Transfer Co.*, 160 W. Va. 530, 236 S.E.2d 207 (1977) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).[7]

The stated purpose of the West Virginia Skiing Responsibility Act is set forth in West Virginia Code § 20-3A-1 (with emphasis added):

> Since it is recognized that there are inherent risks in the sport of skiing which should be understood by each skier and which are *essentially impossible to eliminate by the ski area operator*, it is the purpose of this article to define those areas of responsibility and affirmative acts for which ski area operators shall be liable for loss, damage or injury and those risks which the skier expressly assumes for which there can be no recovery.

The "areas of responsibility and affirmative acts for which ski area operators shall be liable for . . . injury," *id.*, include that ski area operators *shall*

> [m]aintain the ski areas in a reasonably safe condition, except that such operator shall not be responsible for any injury, loss or damage caused by the following: Variations in terrain; surface or subsurface snow or ice conditions; bare spots, rocks, trees, other forms of forest growth or debris; collisions with pole lines, lift towers or any component thereof; or, collisions with snowmaking equipment which is marked by a visible sign or other warning implement in compliance with subdivision two of this section.

W. Va. Code § 20-3A-3(8) (emphasis added). As for the duties of skiers, the Act states:

> It is recognized that skiing as a recreational sport is hazardous to skiers, regardless of all feasible safety measures which can be taken. . . . Each skier shall have the sole individual responsibility for knowing the range of his or her own ability to negotiate any ski slope or trail, and it shall be the duty of each skier to ski within the limits of the skier's own ability, to maintain reasonable control of speed and course at all times while skiing, to heed all posted warnings, to ski only on a skiing area designated by the ski area operator and to refrain from acting in a manner which may cause or contribute to the injury of anyone. If while actually skiing, any skier collides with any object or person, except an obviously intoxicated person of whom the ski area operator is aware, the responsibility for such collision

---

[7] Although we construe the factual allegations of the complaint, including all inferences arising therefrom, in the light most favorable to petitioner, *Chapman*, 160 W. Va. at 538, 236 S.E.2d at 212, we are also note the principle that, because statutory immunity is implicated, the circuit court could have insisted on detailed pleading to assist in assessing the foundational facts underlying the respondents' invocation of immunity. *Hutchison v. City of Huntington*, 198 W. Va. 139, 149-50, 479 S.E.2d 649, 659-60 (1996). The circuit court did not do so.

4

shall be solely that of the skier or skiers involved and not that of the ski area operator.

W. Va. Code § 20-3A-5(a), in part. Additionally, "[e]ach skier has the duty to maintain control of his or her speed and course at all times when skiing and to maintain a proper lookout so as to be able to avoid other skiers and objects. However, the primary duty shall be on the person skiing downhill to avoid collision with any person or objects below him or her." W. Va. Code § 20-3A-5(f). Finally, "[b]efore beginning to ski from a stationary position or before entering a ski slope or trail from the side, the skier shall have the duty to avoid moving skiers already on the ski slope or trail." W. Va. Code § 20-3A-5(j).

On appeal, petitioner argues that the circuit court erred because the Act is not intended to absolve a ski area operator from liability where it has violated its statutory duty to maintain the ski area in a reasonably safe condition. "In view of this statutory requirement of reasonable maintenance [i.e., West Virginia Code § 20-3A-3(8)], we do not attribute to the legislature the intent to immunize ski areas from liability for (1) intentional torts or (2) negligence, where either of these involves a violation of an operator's duty to maintain the ski areas in a reasonably safe condition." *Lewis v. Canaan Valley Resorts, Inc.*, 185 W. Va. 684, 693, 408 S.E.2d 634, 643 (1991) (footnote omitted). Rather, "[t]he legislature intended to immunize ski area operators only for the 'inherent risks in the sport of skiing which should be understood by each skier and which are essentially impossible to eliminate by the ski area operator[.]' *W. Va. Code*, 20-3A-1[1984]." *Id.*

Petitioner contends that A.B.'s injuries would not have occurred but for respondents' failure to manage and operate the tubing park in a reasonably safe condition by allowing a snow tuber to descend the hill while A.B. was still in the tubing lane. A collision between snow tubers caused solely by respondents' negligence does not constitute an "inherent risk" that is "essentially impossible to eliminate by the ski area operator," W. Va. Code § 20-3A-1, and therefore, the Act should not afford respondents immunity from liability for A.B.'s injuries. Relatedly, petitioner argues, a tuber (unlike a traditional skier) lacks the ability to speed up, slow down, turn, or otherwise avoid colliding with an individual who is directly in front of him or her "until the tube meets its natural end." Petitioner contends that respondents accounted for these inherent safety limits on tubers by stationing an individual at the top of the tubing run for the specific purpose of maintaining the tubing lanes and ensuring they were clear of other tubers before directing other tubers safely down the lanes. Petitioner asserts that respondents' agents or employees were negligent in sending a tuber down the lane after A.B. descended the hill but before she cleared the area in front of the tuber, proximately causing the collision and A.B.'s injuries.

Respondents counter that this Court has consistently held that the general duty of ski area operators to "maintain the ski areas in a reasonably safe condition" does not apply to inherent risks of the sport of skiing specifically identified in the Act as being the responsibility of skiers, and that this includes collisions between snow tubers, which are treated no differently than skiers for purposes of whether statutory immunity from liability applies. Respondents argue that the circuit court did not err in dismissing petitioner's complaint. We disagree.

In *Hardin v. Ski Venture, Inc.*, 848 F.Supp. 58 (N.D.W. Va. 1994), a skier who was injured when he lost control while skiing and collided with a tree sued the ski area operator in negligence alleging, in part, that (1) its snowmaking machine made excessively wet snow that stuck to the

5

plaintiff's goggles, obscuring the plaintiff's vision, and (2) the machine was pointed uphill, blowing snow directly into the face of skiers going down the ski slope. *Id.* at 59. The plaintiff also alleged that the operator failed to mark the location of the snowmaking machine with a visible sign or other warning implement. The ski area operator filed a motion for summary judgment arguing that it had complied with its statutory responsibilities by properly marking the location of snowmaking equipment and placing a notice that snowmaking operations were occurring on the slope,[8] and that the Act does not impose upon it any further obligation with regard to snowmaking activity. The operator argued that West Virginia Code § 20-3A-3(8), which generally requires the operator to "maintain the ski areas in a reasonably safe condition," "cannot be used to expand the specific duties set forth in *Code* §§ 20-3A-3(2) and (6)." *Hardin*, 848 F.Supp. at 59. It also maintained that the plaintiff assumed the inherent risks of skiing, including snowmaking, which "is a commonplace risk inherent to the sport which cannot be eliminated." *Id.* Finally, the operator argued that it was the plaintiff who breached the statutory duties imposed upon skiers by failing to "1) ski within the limits of his ability; 2) maintain reasonable control of speed; and 3) heed posted warnings." *Id. See* W. Va. Code § 20-3A-5(a). For these reasons, the ski area operator argued that the Act barred the plaintiff's claims against it.

The court in *Hardin* denied the ski area operator's motion for summary judgment, concluding that whether the operator complied with all of its statutory duties was "subject to factual development," as was whether the plaintiff's accident was "caused by excessively wet manufactured snow which allegedly obscured [the] plaintiff's vision" and, if it was, whether the ski area operator had acted negligently in that regard. *Id.* at 60. Reiterating that the legislature "did not intend to immunize ski area operators from liability for negligence where it involves a violation of an operator's duty to maintain the ski areas in a reasonably safe condition," *id.* at 61 (citing *Lewis*, 185 W. Va. at 693, 408 S.E.2d at 643), the court rejected the theory that the statutory requirement that operators must "maintain the ski areas in a reasonably safe condition" cannot be used to expand an operator's specific duties that are set forth in West Virginia Code § 20-3A-3(2) (visibly marking snowmaking equipment) and (6) (posting a notice that snowmaking is in progress). *Id.* at 60-61. Also recognizing, as did this Court in *Lewis*, that it was the Legislature's intention "to immunize ski area operators for inherent risks which are essentially impossible to eliminate[,]" *id.* at 61, the court in *Hardin* observed that "a factual dispute potentially exists whether the condition, urged unsafe by the plaintiff, could have been eliminated." *Id.* at 61. The court thus held that,

> [c]learly, the . . . Act would ban recovery in instances in which risks are inherent in the sport of skiing and are essentially impossible to eliminate. In the present case, it is alleged that the defendant negligently engaged in snow-making activity and that the alleged dangerous condition *could have been eliminated* if the defendant

---

[8] West Virginia Code § 20-3A-3(2) requires ski area operators to "[m]ark with a visible sign or other warning implement the location of any hydrant or similar equipment used in snowmaking operations and located on ski slopes and trails[,]" while West Virginia Code § 20-3A-3(6) requires that operators "[p]lace, or cause to be placed, whenever snow grooming or snowmaking operations are being undertaken upon any trail or slope while such trail or slope is open to the public, a conspicuous notice to that effect at or near the top of the trail or slope."

had reasonably maintained the snow-making equipment. These allegations present questions of fact which compel further development.

*Id.* (emphasis added).

We find *Hardin* to be persuasive, as there are allegations set forth in the complaint that compel further development as to whether the collision between A.B. and the snow tuber who descended the hill after her was an inherent risk that could have been eliminated by respondents had they reasonably maintained the ski area by properly monitoring and directing tubers safely down the hill. *See id.* Thus, we reject respondents' argument that West Virginia Code § 20-3A-3(8), which generally requires ski area operators to maintain ski areas in a reasonably safe condition, is necessarily inapplicable to the statutory duties specifically imposed upon skiers – namely, that "[i]f . . . any skier collides with any . . . person. . . the responsibility for such collision shall be solely that of the skier or skiers involved . . . ." W. Va. Code § 20-3A-5(a).

Indeed, the Act also provides that "[e]ach skier has the duty to maintain control of his or her speed . . . and to maintain a proper lookout so as to be able to avoid other skiers and objects[,]" and that "the person skiing downhill" has "the primary duty . . . to avoid collision with any person or objects below him or her." W. Va. Code § 20-3A-5(f). The Act further provides that "[b]efore beginning to ski from a stationary position . . . the skier shall have the duty to avoid moving skiers already on the ski slope or trail." W. Va. Code § 20-3A-5(j). Given the allegations in the complaint that the tubing run was "packed to maximize speed" and that snow tubes lack any mechanism allowing tubers to either maintain control of their speed, steer, or stop, there is clearly a factual question as to whether respondents affirmatively undertook these statutory duties by placing an employee or agent at the top of the tubing hill for the specific purpose of monitoring and directing the flow of tubers down the hill so that a tuber beginning his or her descent from a stationary position would "avoid" the tubers that were already descending the hill and, thus, ensuring that the descending tuber "avoid[s] collision with any person . . . below him or her." W. Va. Code § 20-3A-5(f). And if it is determined that respondents undertook these duties, then petitioner is similarly entitled to explore whether respondents breached these duties by sending a tuber down the hill while A.B. was still in the lane, proximately causing the collision and A.B.'s injuries. Simply put, the facts and circumstances of this case, as alleged in the complaint, compel further development as to whether the collision that seriously injured A.B. was a risk inherent in the sport of tubing and was essentially impossible to eliminate.[9] *See* W. Va. Code § 20-3A-1.

---

[9] Other jurisdictions have similarly found that injuries caused by the negligence of the ski area operator (or its employees) are actionable. *See Nolan v. Mt. Bachelor, Inc.*, 856 P.2d 305, 307 (Or. 1993) (under Oregon's skiing activities law, where skier injured in collision with ski instructor who was acting within the course and scope of his employment, the court determined that "although the skiing activities law 'shields ski area operators from liability for collisions between customers,' it does not shield . . . operators from liability for collisions caused by the negligence of an employee of a ski area operator"); *Brown v. Stevens Pass, Inc.*, 984 P.2d 448, 452 (Wash. Ct. App. 1999) (reversing summary judgment in favor of ski area operator on the ground that under Washington's ski statute, "skiers who collide with obvious stationary object, such as the fence in

Continued . . .

7

Like *Hardin*, the unique facts and circumstances of this case are readily distinguishable from prior cases in which this Court held that the Act's immunity from liability applied to claims that a ski area operator failed to maintain its ski area in a reasonably safe condition. In *Pinson v. Canaan Valley Resorts, Inc.*, 196 W. Va. 436, 473 S.E.2d 151 (1996), a self-described "intermediate skier" filed suit against the ski area operators after she fell and was injured when, without warning from the operator, she happened upon "deep ungroomed natural snow" following a large (and continuous) snowfall. *Id.* at 437-8, 473 S.E.2d at 153. This Court concluded that summary judgment in favor of the ski area operators was appropriate, finding that the Act imposes upon skiers, rather than operators, the responsibility for injuries caused by "'variations in terrain; surface or subsurface snow or ice conditions' [*see* W. Va. Code § 20-3A-3(8)] and that such variations or conditions, in the form of ungroomed snow, caused the injury to [the plaintiff]. Nor does the Act require the posting of warnings concerning the presence of ungroomed snow or require that ski trails be closed because of ungroomed snow." *Id.* at 441, 473 S.E.2d at 156. We noted in *Pinson* that the plaintiff had been informed that she needed to be aware of changing skiing or snowing conditions on a slope or trail and that such changes are risks inherent to the sport of skiing. *Id. See also Addis v. Snowshoe Mountain, Inc.*, No. 12-1537, 2013 WL 6152356 (W. Va. Nov. 22, 2013)(memorandum decision) (rejecting experienced skier's claim that the ski area operator was negligent in failing to properly maintain the ski area where the skier slipped on ice while skiing down a double black diamond slope because skiers, rather than ski area operators, are liable for "variations in terrain; surface or subsurface snow or ice conditions" and that such variations and conditions caused the plaintiff's injury.) Finally, *Stephen W. v. Timberline Four Seasons Resort Mgmt. Co.*, No. 14-1158, 2015 WL 5125536 (W. Va. Aug. 31, 2015)(memorandum decision), involved a minor who collided with an electrical box used for snowmaking purposes when she skied off the trail to avoid colliding with another skier. The plaintiff sued the ski area operator, arguing that the resort was liable under the Act for failing to properly mark the electrical box with a "visible sign or other warning implement," *see* W. Va. Code § 20-3A-3(2), and for "failing to maintain the ski slope in a 'reasonably safe condition,'" *see* W. Va. Code § 20-3A-2(8), because the resort failed to pad the electrical box. *Stephen W.* at *1. This Court disagreed and affirmed the order granting summary judgment in favor of the operator finding that the evidence of record showed that, in fact, there was a visible caution sign; that, under the Act, operators are not liable for "collisions with snowmaking equipment which is marked by a

_____

this case, because of difficult snow conditions, have assumed the risk of collision posed by the difficult snow conditions, but have not, thereby, assumed the risk of operator negligence, that is, the risk that the resort operator may have failed to take reasonable precautions to avoid or mitigate injury from a latent condition of which the skier has no knowledge"); *see also Kopeikin v. Moonlight Basin Mgmt., LLC*, 981 F.Supp.2d 936, 946 (D. Mont. 2013) (denying motion to dismiss where injured skier alleged that he encountered "an unmarked, arguably ill-designed, and boulder-lined [']cat track['] that hid from view a fifty-foot boulder field in the middle of a groomed run," which "hazards . . . were unnecessary and could have been eliminated or alleviated [by the ski area operator] through the exercise of ordinary care"); *Huneau v. Maple Ski Ridge, Inc.*, 794 N.Y.S.2d 460, 461 (N.Y.App.Div. 2005) (holding summary judgment not appropriate where snow tuber injured in collision with another tuber given evidence that "the duties of the attendant stationed at the top of the [tubing] run included maintaining a sufficient distance between tubers to afford adequate time to clear the bottom of the run before the next tuber arrived").

visible sign[,]" *id.* at *2-3; and that there is no requirement under the Act that the operator pad the electrical box. *See id.* at *3.[10]

The present case is clearly distinguishable from *Pinson*, *Addis*, and *Stephen W.* because it involves neither variations in terrain, surface, or subsurface conditions nor collisions with marked (or unpadded) equipment. Rather, as we have already established, the crux of petitioner's claim is that respondents were negligent because, it is alleged, they placed their employees or agents at the top of the hill for the purpose of monitoring the flow of tubers, thus ensuring that they descend the hill safely so as to avoid colliding with one another.[11] Because petitioner sufficiently pled that respondents breached the duty that they undertook to ensure the safety of tubers at the resort, at this stage of the proceedings, the Act does not apply to immunize respondents from liability.[12]

---

[10] Also in *Stephen W.*, the majority of the Court rejected the plaintiff's argument that because the injured skier was twelve years old at the time of the accident, there was a rebuttable presumption that the child was not guilty of contributory negligence. *Id.* at 3 (citing *Pino v. Szuch*, 185 W. Va. 476, 477, 408 S.E.2d 55, 56 (1991) ("there is a rebuttable presumption that a child between the ages of seven and fourteen is not guilty of contributory negligence")). That is, the Court disagreed with the plaintiff that the injured child could not have assumed the inherent risk of skiing. *Id.* at *3. Rather, the Court concluded that the Act applies to all skiers and makes no reference to a skier's age; therefore, the Court "declined to read into the statute that which it does not expressly say, especially in this case where [the ski area operator] breached no duty under the [Act]." *Id.* In this case, the circuit court applied *Stephen W.* to hold that respondents did not owe A.B. a heightened duty of care. We note that neither A.B.'s age nor the extent of her disability is apparent from the appendix record, and that petitioner does not argue that either prevented her, as a matter of law or fact, from assuming the inherent risks of snowtubing. *See Ewing v. Lanark Fuel Co.*, 65 W. Va. 726, 65 S.E. 200, 203–04 (1909) ("Of course it could not be said that one had assumed the risk of a danger which he did not comprehend or understand, because assumption of a risk is a voluntary act requiring a positive operation of the mind. It is based upon knowledge, actual or constructive, of possible dangers. Without such knowledge there could be no assumption.").

[11] *See Ferbet v. Hidden Valley Golf and Ski, Inc.*, 618 S.E.2d 596, 607 (Mo. Ct. App. 2020) (recognizing that a risk deemed to be inherent may nonetheless "become actionable if the risk is altered or enhanced by the negligence of the activity operator" (citation omitted)).

[12] On appeal, petitioner also argues that he was enticed to bring A.B. to the snow tubing park at the resort after he saw an advertisement on social media that the resort was hosting the Special Olympics that day, leading him to believe that the resort would have special accommodation to ensure A.B.'s safety while snow tubing. Petitioner argues that, given these representations by respondents, the circuit court erred in finding that respondents should not be held to a higher standard or duty of care with respect to A.B., a child with special needs. We decline to address this argument. In the complaint, petitioner identified A.B. only as a child with "special needs," omitting any of the factual allegations upon which he relies to contend that respondents should have been held to a higher standard of care with regard to A.B. And although petitioner

Continued . . .

For the reasons stated above, the circuit court's order dismissing petitioner's complaint is reversed, and this case is remanded for further proceedings.

Reversed and remanded.

**ISSUED:** May 23, 2023

**CONCURRED IN BY:**

Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn, deeming herself disqualified, did not participate in the decision of this case.
Judge R. Steven Redding, sitting by temporary assignment

**DISSENTING:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker

Walker, J., dissenting, joined by Armstead, C.J.:

In reversing the decision of the circuit court dismissing this case, the majority has reached the wrong result by misapplying the clear command of the West Virginia Skiing Responsibility Act[1] and rendering its exceptions meaningless. Because the Act provides immunity to the ski area operator in this situation, I respectfully dissent. I am authorized to say that Chief Justice Armstead joins me in this dissent.

Petitioner Thomas B., on behalf of his minor daughter A.B., filed suit against the respondents, operators and managers of the Canaan Valley Resort and Conference Center, after A.B. was injured in a snow tubing accident. According to the complaint, the resort includes a snow tubing park consisting of multiple, man-made lanes of packed snow. At the top of these lanes, where tubers begin their descent, an expeditor, who is an employee of the resort, is stationed "to indicate to guests when the guest or guests in front of them have cleared the lane to make it safe for them [to] begin their descent."

included these allegations, for the first time, in his response to respondents' motion to dismiss, the circuit court's dismissal order does not suggest or otherwise indicate that it considered them below. Rather, the circuit court properly confined its review of respondents' Rule 12(b)(6) motion to dismiss to the four corners of petitioner's complaint, *see generally Mountaineer Fire & Rescue Equip., LLC v. City Nat'l Bank of W. Va.*, 244 W. Va. 508, 854 S.E.2d 870 (2020), to which petitioner does not assign as error in this appeal.

[1] W. Va. Code §§ 20-3A-1 to -9.

Thomas B. alleged that he traveled to the resort with A.B., who has special needs, and two other daughters in January of 2019. He claims that A.B. "was struck by another snow tuber who was permitted to start his or her descent before [A.B.] had cleared from her lane." The collision knocked A.B. on her back and she suffered serious injuries.

Thomas B. alleged that the respondents breached their duty to operate and maintain the snow tubing park in a reasonably safe manner by failing to properly train and supervise employees and that they negligently and recklessly permitted other guests to slide down the hill before A.B. cleared her lane. The respondents moved to dismiss under Rule 12(b)(6) if the West Virginia Rules of Civil Procedure, arguing that the claims were barred by the Act. Finding that A.B. fit the definition of "skier" under the Act, the circuit court concluded that the respondents were immune from liability and dismissed the complaint. It agreed with the respondents that under the Act, the responsibility for collisions between skiers is solely that of the skiers involved.[2] Thomas B. challenges the dismissal because he claims he sufficiently pled that the respondents failed in their statutory duty under the Act to maintain the snow tubing area in a reasonably safe condition.

Our analysis begins, and ends, with the plain language of the Act. In its purpose statement, the Act acknowledges "that there are inherent risks in the sport of skiing which should be understood by each skier and which are essentially impossible to eliminate by the ski operator[.]"[3] As a result, the purpose of the Act is "to define those areas of responsibility and affirmative acts for which ski area operators shall be liable for loss, damage or injury and those risks which the skier expressly assumes for which there can be no recovery."[4] The majority recognizes that while neither A.B.'s age nor the extent of her disability is apparent from the record, Thomas B. does not contend that either prevented her from assuming the inherent risks of snowtubing.

Under the Act, a skiing area "means all ski slopes and trails[.]"[5] A skier "means any person present at a skiing area under the control of a ski area operator for the purpose of engaging in the sport of skiing[.]"[6] And the term "skiing" includes "sliding downhill . . . on . . . a tube[.]"[7]

The Act then enumerates the duties of both ski operators and skiers. It generally declares that "[e]very ski operator shall: . . . (8) [m]aintain the ski areas is a reasonably safe condition[.]"[8]

---

[2] *Id*. at § 20-3A-5(a).

[3] W. Va. Code § 20-3A-1.

[4] *Id.*

[5] *Id*. at § 20-3A-2(g).

[6] *Id*. at § 20-3A-2(h).

[7] *Id*. at § 20-3A-2(i).

[8] *Id*. at § 20-3A-3.

11

On the other hand, the Act lists specific examples of inherent risks for which "[e]ach skier expressly assumes the risk of and legal responsibility for any injury, loss or damage to person or property which results from participation in the sport of skiing[.]"[9]  In this same section, the Act states that:

> [e]ach skier shall have the sole individual responsibility for knowing the range of his or her own ability to negotiate any ski slope or trail, and it shall be the duty of the skier to ski within the limits of the skier's own ability . . .  If while actually skiing, any skier collides with any object or person, except an obviously intoxicated person of whom the ski area operator is aware, the responsibility for such collision shall be solely that of the skier or skiers involved and not that of the ski area operator.[10]

We have routinely recognized that, "[w]here the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation."[11]  And we have held that, "[t]he general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled."[12]

The Act demonstrates the intent of the Legislature to remove, at the onset, what it defines as the inherent risks of skiing from the common law negligence arena.  In *Hardin v. Ski Venture, Inc.*, the United States District Court for the Northern District of West Virginia stated that the Act "may modify the common law doctrine of assumption of risk by statutorily creating a complete bar to recovery under certain circumstances[.]"[13]  And, this Court has recognized the same immunity.  For example, in *Pinson v. Canaan Valley Resorts, Inc.*, we held that the Act barred the plaintiff from recovering against the ski resort when she fell and fractured her leg during a descent on a slope covered with ungroomed snow.[14]  We reasoned that the plaintiff's injury fell within the purview of the Act and noted that it was "a pragmatic response by the legislature to the mutability of snow conditions upon ski slopes and to the concomitant 'inherent risks' of the sport of skiing."[15]

---

[9] *Id*. at § 20-3A-5(a).

[10] *Id.*

[11] Syl. Pt. 2, *Crockett v. Andrews*, 153 W. Va. 714, 172 S.E.2d 384 (1970).

[12] Syl. Pt. 1, *UMWA by Trumka v. Kingdon*, 174 W. Va. 330, 325 S.E.2d 120 (1984).

[13] 848 F. Supp. 58, 61 (N.D. W. Va. 1994).

[14] 196 W. Va. 436, 473 S.E.2d 151 (1996).

[15] *Id.* at 441, 473 S.E.2d at 156.

It is the Act's subsections dealing with ski area operators and skiers here that the majority perceives competing duties that necessitate further factual development. But where there is a general duty to maintain a ski area in a safe condition for the ski operator, there are very specific responsibilities assigned to skiers who assume the sport's inherent risks. So, the specifically enumerated list of skier responsibilities takes precedence over the general responsibility of a ski area operator. Otherwise, there would be no reason to create this list if a general duty supplanted the categorical bars to recovery. The correct reading of the Act requires a court to determine whether an alleged injury falls within an enumerated inherent risk of skiing. If it does, the court should go no further; there is no need to address the question of the ski operator's general duty to maintain the area in a reasonably safe condition.

Following this framework, a simple parsing of the Act reveals that the collision exemption articulated in § 20-3A-5(a) applies here. The collision that injured A.B. resulted when another tuber slid down the lane in his or her tube. And the Act states that "the responsibility for such collision shall be solely that of the skier or skiers involved and not that of the ski area operator."[16] There is no need to reach the question of the expeditor's reasonableness because the accident fits into an articulated, statutory exemption from recovery from common law tort doctrines. The majority misapplied this statutory exception when it stated that the facts alleged here compel further development as to whether the collision that injured A.B. was a risk inherent in the sport of tubing. It was precisely the type of risk enumerated in § 20-3A-5(a).

Other states with similar statutes have found statutory immunity under comparable facts. For instance, in Michigan, a plaintiff and his son were barred by its ski safety act from recovering for injuries sustained when they collided with a chair lift even though the plaintiff alleged that the injuries sustained resulted from the ticket operator's negligence.[17] The Michigan court noted that the legislative purpose behind the act was to stabilize the ski industry by shifting the burden for some injuries to the skier.[18] And, because a collision with a ski lift was a specifically enumerated injury for which the skier was responsible, the court concluded that "when, as here, injuries occur as a result of any of the statutorily enumerated dangers, the reasonableness of the skier's or the operator's conduct is rendered irrelevant."[19]

In the same way, a Maine court held that a plaintiff was barred under its state's ski safety statute from recovering for injuries she sustained after her tube went airborne.[20] Just as here and in Michigan, the plaintiff alleged, in part, that her injuries resulted from the ski area operator's

---

[16] W. Va. Code § 20-3A-5(a).

[17] *Kent v. Alpine Valley Ski Area, Inc.*, 613 N.W.2d 383, 390 (Ct. App. Mich. 2000).

[18] *Id.* at 737.

[19] *Id.* at 738.

[20] *Maddocks v. Whitcomb*, 896 A.2d 265 (Maine 2006).

13

negligence.[21]  Specifically, the plaintiff alleged that it was the duty of the ski area operator to instruct her on the appropriate procedures for tubing.[22]  Again, the court looked to the language of the statute and found that it provided statutory immunity to the ski resort operator.[23]

In the case before us, the circuit court correctly found that because the facts alleged in the complaint reveal that A.B.'s injuries resulted from a clearly enumerated, inherent risk of skiing, the respondents were not responsible for her injuries.  For these reasons, I would affirm the order granting the motion to dismiss.

---

[21] *Id.* at 266-67.

[22] *Id.*

[23] *Id.* at 268.